UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

VAUGH SCHOTT, NIGERIA SCOTT, PRINCE
SCOTT, ANDRE HARRIS, BRENDA SCOTT,
KRAIG UTLEY, COREY MARROW, A.S.,
A MINOR CHILD, K.M., A MINOR CHILD,
AND JULIAN RENE,

Index No. 14-cv-4441(KMK)

Memorandum of Law
in Support

<em>Plaintiffs,</em>

against --

THE CITY OF MOUNT VERNON, a municipal
Entity, MT. VERNON POLICE OFFICER ALLEN,
MT. VERNON POLICE OFFICER CAMILO
ANTONINI, MT. VERNON POLICE OFFICER
TIMOTHY BRILEY, MT. VERNON POLICE
OFFICER DET. BRENT GAMBLE, MT. VERNON
POLICE OFFICER SGT. STEVEN SEXTON,
CITY OF MOUNT VERNON POLICE
DEPARTMENT, AND POLICE OFFICERS JOHN
DOES 1-10,

<em>Defendants.</em>

------------------------------------------------------------------x

"When it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"

-- *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))

"Then my people will live in a peaceful habitation, and in secure dwellings and in undisturbed resting places."

-- Isaiah 32:18

# **Table of Contents**

I.   Claims ........................................................................................................1

II.   Factual Background ..................................................................................1

III.   The Summary Judgment Standard .........................................................6

IV.   The Legal Standard for Claims Under Section 1983 .............................7

   Personal Involvement ............................................................................7

   Supervisory Liability .............................................................................7

   B.   Application to the Present Case ......................................................8

V.   Fourth Amendment Seizures ...................................................................8

   A.   The Legal Standard ..........................................................................8

   B.   Application to the Present Case ........................................................9

VI.   Warrantless Entry Into a Home ..............................................................9

   A.   The Legal Standard ..........................................................................9

   Consent to Enter an Apartment Must Be Unanimous ...........................10

   Exigent Circumstances Require Both Knowledge and Urgency .............11

   B.   Application to the Present Case ......................................................12

VII.   False Arrest ...........................................................................................13

   A.   The Legal Standard ........................................................................13

   The Elements of the Cause of Action ...................................................13

   Probable Cause is an Affirmative Defense ...........................................13

   Defendants Bear the Burden to Establish the Existence of Probable Cause ............14

   B.   Application to the Present Case ......................................................15

VIII.   Failure to Intervene ..............................................................................15

   A.   The Legal Standard ........................................................................15

   B.   Application to the Present Case ......................................................16

IX.   Respondeat Superior ..............................................................................16

   A.   The Legal Standard ........................................................................16

   B.   Application to the Present Case ......................................................16

X.   Conclusion .............................................................................................16

# <u>Table of Authorities</u>

**CASES**

*Ackerson v. City of White Plains,* 702 F.3d 15 (2d Cir. N.Y. 2012)......................................................14

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) ..................................................................................16

*Broughton v. State,* 37 N.Y.2d 451 (1975)................................................................... 10, 13, 14, 15

*CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP,* 735 F.3d 114 (2d Cir. 2013) ............................ 6

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ...................................................................................... 8

*Cowan v. Breen*, 352 F.3d 756 (2d Cir. Conn. 2003)............................................................................ 8

*Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004) ................................................................................14

*Dejesus v. Village of Pelham Manor*, 282 F. Supp. 2d 162 (S.D.N.Y. 2003) ........................................ 9

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. N.Y. 2010) ........................................................ 10, 14

*Florida v. Jardines*, 133 S. Ct. 1409 (2013) ...................................................................................2, 10

*Garnett v. City of New York*, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) .....................15

*Georgia v. Randolph,* 547 U.S. 103 (2006) ..........................................................................................11

*Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455 (S.D.N.Y. May 28, 2008) .........................14

*Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263 (S.D.N.Y. 2015) ............................................... 10, 12

*Guntlow v. Barbera*, 907 N.Y.S.2d 86 (N.Y. App. Div. 3d Dep't 2010)..............................................13

*Harman v. Pollack*, 446 F.3d 1069 (10th Cir. Utah 2006)..................................................................12

*Harris v. O'Hare*, 770 F.3d 224, 236 (2d Cir. Conn. 2014) ................................................................13

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. N.Y. 2003) ........................................................... 7

*Howard v. Town of Dewitt*, 5:12-cv-870, 2015 U.S. Dist. LEXIS 64947 (N.D.N.Y May 19, 2015).......... 9

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. N.Y. 2006) ...................................................................... 13, 14

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001) ............................................. 8

*Ky. v. Graham*, 473 U.S. 159 (1985) ..................................................................................................... 7

*Kyllo v. United States*, 533 U.S. 27 (2001).......................................................................................... 9

*Lepore v Town of Greenburgh*, 120 A.D.3d 1202 (N.Y. App. Div. 2d Dep't 2014)..............................16

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. N.Y. 2012) ................................................................. 7

*Loria v. Gorman*, 306 F.3d 1271 (2d Cir. 2002) ................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................................... 6

*Michigan v. Tyler*, 436 U.S. 499 (1978)...............................................................................................11

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) ...............................................................................15

*Payton v. New York*, 445 U.S. 573 (1980) ............................................................................................ 9

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. N.Y. 2001) .......................................................... 7

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, (2d Cir. 2014) ..................................................... 6

*Ray v. Metropolitan Transp. Auth.*, 221 A.D.2d 613 (N.Y. App. Div. 2d Dep't 1995) .......................16

*Rivera v. United States*, 928 F.2d 592 (2d Cir. N.Y. 1991) .................................................................12

*Schmerber v. California*, 384 U.S. 757 (1966) .....................................................................................11

*Terry v. State of Ohio*, 392 U.S. 1 (1968)............................................................................................. 9

*Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740  (S.D.N.Y. 2005)............................................16

*Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27 (2d Cir. N.Y. 2011) ...................... 13, 14

*United States v. Brignoni Ponce*, 422 U.S. 873 (1975) ........................................................................ 8

*United States v. Hayes*, 551 F.3d 138 (2d Cir. 2008) ..........................................................................10

*United States v. Santana*, 427 U.S. 38 (1976) .....................................................................................11

*United States v. Simmons*, 661 F.3d 151 (2d Cir. 2011) ............................................................... 11, 13

*United States v. Sugrim*, 732 F.2d 25 (2d Cir. N.Y. 1984) ................................................................... 8

*United States v. Titemore*, 437 F.3d 251 (2d Cir. 2006)......................................................................10

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ........................................... 6

*Walker v. City of N.Y.*, No. 11-CV-2941, 2014 U.S. Dist. LEXIS 41287, 2014 WL 12447785 (S.D.N.Y. Mar. 26, 2014) ............................................................................................................................................. 7

*Warden v. Hayden*, 387 U.S. 294 (1967)..............................................................................................11

*Welsh v. Wisconsin*, 466 U.S. 740 (1984).............................................................................................11

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. N.Y. 1996) ...................................................................................13, 14

*Wong v. Yoo*, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) ............................................................................................15

*Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009)...................................................................................................7

*Wrobel v. Cty. of Erie*, 692 F.3d 22 (2d Cir. 2012) ...........................................................................................6

*Wu v. City of New York*, 934 F. Supp. 581 (S.D.N.Y. 1996) ...........................................................................14

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ...............................................................................................................12

**RULES**

Fed. R. Civ. P. 56(a)...............................................................................................................................................6

# I.  Claims

1.      In this motion, the plaintiffs seek partial summary judgment, on claims One, Two, Three, Four, and Eight.

2.      Claim one is a claim under Section 1983 for violations of the plaintiffs' rights under, *inter alia*, the Fourth Amendment.  The Fourth Amendment claims asserted by the plaintiffs include unlawful entry into the plaintiffs' apartment (Compl. ¶¶ 30-34); unlawful seizure and confinement of the plaintiffs within the apartment (Compl. ¶¶ 35-40); unlawful search (Compl. ¶¶ 1, 41-43), and false arrest (Compl. ¶¶ ¶¶ 35-40, 44-45).

3.      Claim Two is a claim for False Arrest.

4.      Claim Three is a claim for Failure to Intervene.

5.      Claim Four is a claim for false arrest/imprisonment under New York State law.

6.      Claim Eight is a claim under respondeat superior against the City of Mount Vernon and supervisory officers, including Defendant Sexton.

# II. Factual Background

7.      This incident occurred on March 20, 2013, at the plaintiff's home at 328 South Second Avenue in Mount Vernon.  (56.1 ¶¶ 2, 27, 30).  Non-party police officers Police officers Michael Gregorio and Johanna Santos arrived at 324 South Second Avenue at approximately 6:30 PM, canvassing for a white minivan.  (56.1 ¶¶ 84-85). Approximately 20 minutes earlier, an uncertain number of people were seen getting into a white minivan and leaving the vicinity of a location where gunshots were heard.  (56.1 ¶¶ 69, 74, 76).  Other individuals were also reported to have run from the location at the same time.  (56.1 ¶¶ 75-76).  No witnesses saw shots actually being fired.  (56.1 ¶ 77).

The police were not aware of anyone having been injured.  (56.1 ¶ 78).  The police did not know what role, if any, the individuals in the white minivan played in the shooting incident.  (56.1 ¶¶ 75-77).

8.     Gregorio and Santos spotted a white minivan in a driveway at 324 South Second Avenue.  (56.1 ¶¶ 85, 87, 94).  It was unoccupied.  (56.1 ¶ 89).  Gregorio learned that the valid registration belonged to Nigeria Scott, whose address was a PO Box.  (56.1 ¶ 93).  The police had no information concerning where the driver and any passengers might have gone.  (56.1 ¶¶ 90-92).  The police did not know any facts suggesting that any person who had been inside the van was present inside 328 South Second Avenue. (56.1 ¶¶ 99-101).  Gregorio and Santos waited approximately five minutes for Defendant Sergeant Steven Sexton to arrive.  (56.1 ¶ 95).

9.     When Defendant Sexton arrived, he assumed command and retained command over all officers present at the scene throughout the incident.  (56.1 ¶¶ 96-97). Defendant Sexton decided to enter 328 South Second Avenue.  (56.1 ¶¶ 103-104).

10.     328 South Second Avenue was a three family house of three stories.  (56.1 ¶¶ 31-42).  The front door, on a porch, was locked.  (56.1 ¶¶ 42, 105).  The police entered without permission from anyone in the building.  (56.1 ¶¶ 106-107).  The police had no idea which apartment, if any, might contain the people they were looking for, so the police knocked on every door inside 328 South Second Avenue.  (56.1 ¶¶ 112).

11.     Defendant Sexton knocked at the door of the plaintiffs' apartment on the second floor.  (56.1 ¶ 113).  The plaintiffs, with the exception of Nigeria Scott, were inside the apartment.  (56.1 ¶ 114).  Brenda Scott answered the door.  (56.1 ¶ 115). Defendant Sexton did not know who she was, and thus, did not know whether she had

authority to consent to entry into the apartment.  (56.1 ¶ 116).  Defendant Sexton said the police wanted to come in.  (56.1 ¶ 119).  Defendant Sexton and the plaintiffs dispute whether Brenda Scott gave permission or not.  (56.1 ¶¶120-127).   However, there is no dispute that everyone else in the apartment told the police that they did not have permission to enter.  (56.1 ¶¶ 122 – 148).  The police knew that at least one of the people denying consent was a resident of the apartment.  (56.1 ¶¶ 129-132).

12.     The police, including Defendants Sexton and Antonini, pushed through the door to enter, injuring Brenda Scott's foot as she tried to block the door.  (56.1 ¶¶ 149-151).  Prince Scott called police headquarters to complain, but Defendants Sexton and Antonini told the officers who responded to that call not to interfere.  (56.1 ¶¶ 152-154).  The defendant police officers knew that the occupants of the apartment did not want them inside the apartment, and did not give permission for the police to remain in the apartment once they entered.  (56.1 ¶¶ 122 – 148).

13.     Upon entering the apartment, the police forced all the occupants to gather in the living room and remain quiet, threatening all of them with arrest.  (56.1 ¶¶ 155-156, 168-172).  Brenda Scott was forbidden to finish cooking dinner.  (56.1 ¶ 170).  The occupants were required to ask permission to use the bathroom, and were accompanied by an officer when doing so.  (56.1 ¶ 169).  The police searched the house, including such areas as closets and the medicine cabinet.  (56.1 ¶ 157 – 164).  In testimony, Defendant Sexton claimed they were searching for "any victims."  (56.1 ¶ 165).  In their search, the police found no weapons or contraband.  (56.1 ¶ 166).  All the foregoing was done at the command of Defendant Sexton.  (56.1 ¶¶ 96-97).

14.     After approximately two hours inside the apartment, the police learned that Julian Rene had been grazed by a bullet at the scene of the shooting.  (56.1 ¶¶ 174-176).  This was also the first time that the police learned that anyone inside the apartment had been in the area of the reported shooting.  (56.1 ¶ 177).  Although he allegedly had been 'searching for victims, Defendant Sexton testified that he did not look at Julian Rene's injury.  (56.1 ¶ 180).  Julian Rene refused police assistance medical treatment.  (56.1 ¶179).

15.     The police remained in the apartment because Defendant Sexton wanted to search for a gun, and they wanted to see if they could get a search warrant.  (56.1 ¶ 181).  Defendant Sexton's sole reason for believing that a firearm might be present in the apartment was that "the group of individuals … [were] known for weapons possession … or violent acts."  (56.1 ¶ 183).  However, Defendant Sexton did not know whether any of the individuals present in the apartment had ever been either arrested for or convicted of a shooting or gun-related offense.  (56.1 ¶ 185).

16.     Eventually, Defendant Sexton was told that the District Attorney would not obtain a search warrant because there was no probable cause to search.  (56.1 ¶ 187).  The last police officers left the apartment at about 10:30.  (56.1 ¶ 188).  Police remained on the porch and on the plaintiffs' property until approximately 11:57 PM.  (56.1 ¶ 189).

17.     Nigeria Scott was not at home when the police officers arrived.  (56.1 ¶ 201).  When Nigeria arrived, she was prevented from entering her apartment by the police.  (56.1 ¶ 202).  She was made to stand for a period of time on the porch of 328 South Second Avenue.  (56.1 ¶ 203).  Police then told her to get off the porch and leave her own property.  (56.1 ¶ 204).  Nigeria Scott did so.  (56.1 ¶ 205).  Nigeria Scott waited

on the sidewalk for hours while the police occupied her apartment. (56.1 ¶ 206). Nigeria Scott signed a consent form to search the minivan, which belonged to her, under duress, believing that unless she did so the police would not leave her apartment and would confiscate the vehicle. (56.1 ¶¶ 196-197).

18. After entering, the police compelled Vaughn Scott to leave her apartment and stand on the porch. (56.1 ¶ 208). The made her stand on the porch for approximately two hours. (56.1 ¶ 209). Vaughn Scott was told she could not leave the porch. (56.1 ¶ 210). Vaughn Scott asked to be allowed to re-enter her home, but the police refused. (56.1 ¶ 211). Two officers guarded Vaughn Scott to prevent her from leaving the porch or entering the building. (56.1 ¶ 212). One of these officers was Defendant Gamble. (56.1 ¶ 213). The police told Vaughn Scott that if they found anything in the apartment, she would go to jail, because her name was on the apartment lease. (56.1 ¶ 214). After approximately two hours, the police took Vaughn Scott back inside the apartment and made her sit on the couch for approximately two more hours. (56.1 ¶ 215).

19. Police search Prince Scott, Corey Marrow, Andre Harris, Kraig Utley, and Julian Rene. (56.1 ¶ 219, 222-224, 225, 226, 234). Defendant Antonini bent Corey Marrow's hand back and confiscated his cell phone, to prevent Mr. Marrow from filming the police. (56.1 ¶ 218). Defendant Antonini handcuffed Kraig Utley, and he remained in handcuffs for more than three hours. (56.1 ¶¶ 227-233).

20. Two days later, police arrested Corey Marrow for "obstructing governmental administration, on the basis of the fact that Corey told the police to leave him home when they unlawfully entered. (56.1 ¶ 191). The charge was later dismissed

when Corey Marrow pled guilty to an another pending offense from a different date and incident. (56.1 ¶ 192).

## III. The Summary Judgment Standard

21. Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123-24 (2d Cir. 2014) (same). Generally, "[i]t is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).

22. Further, "[t]o survive a [summary judgment] motion . . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of N.Y.*, No. 11-CV-2941, 2014 U.S. Dist. LEXIS 41287, 2014 WL 1244778, at *5

(S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, *inter alia, Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

## IV. The Legal Standard for Claims Under Section 1983

23.     "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Lore v. City of Syracuse,* 670 F.3d 127, 168 (2d Cir. N.Y. 2012) (quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)).

### PERSONAL INVOLVEMENT

24.     Generally, a defendant is liable for a Constitutional wrong if they were personally involved in the wrong. Personal involvement and liability can be established by showing that the defendant: "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. N.Y. 2001).

25.     As the Second Circuit explained in <u>Provost</u>, "participation" encompasses a defendant who, "with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect' - - **such as ordering or helping others** to do the unlawful acts, rather than doing them him- or herself." *Id.*, at 154 (emphasis added).

### SUPERVISORY LIABILITY

26.     A supervisory official can be responsible for the acts of his subordinates in a Section 1983 action, if he or she was personally involved in the constitutional wrong. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. N.Y. 2003) (citing *Johnson*

*v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) and *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  In the supervisory context, "'[p]ersonal involvement' is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's [*inter alia*]… failure to take corrective action after learning of a subordinate's unlawful conduct, [or] gross negligence in supervising subordinates who commit unlawful acts" *Id.*

**B.  Application to the Present Case**

27.  Defendant Sexton has personal involvement in all wrongdoing alleged both as a primary actor and as supervisor and commander of all other officers present. Defendant Antonioni has personal involvement in the unlawful entry, and in the seizure of Corey Marrow and Kraig Utley.  The remaining defendants has personal involvement in helping others to do the unlawful acts.

## V. Fourth Amendment Seizures

**A.  The Legal Standard**

28.  "A detention no matter how momentary is a seizure under the Fourth Amendment." *United States v. Sugrim*, 732 F.2d 25, 28 (2d Cir. N.Y. 1984) (citing *Florida v. Royer*, 460 U.S. 491 (1983)).  A detention can be understood as "a governmental termination of freedom of movement through means intentionally applied.'" *Cowan v. Breen*, 352 F.3d 756, 763-764 (2d Cir. Conn. 2003).  A seizure can be accomplished by the use of force, "the display of a weapon, physical touching of the person by the officer [or] language or tone indicating a show of authority that may compel compliance with the officer's request." . *Sugrim*, 732 F.2d at 28.

29.  "The Fourth Amendment applies to all seizures of the person." *United States v. Brignoni Ponce*, 422 U.S. 873, 878 (1975).  "No formal procedure must occur

for a court to determine that an arrest or seizure has taken place." *Dejesus v. Village of Pelham Manor*, 282 F. Supp. 2d 162, 169 (S.D.N.Y. 2003) (citing *Terry v. State of Ohio*, 392 U.S. 1, 16 (1968)).

### B. Application to the Present Case

30.     The plaintiffs were subjected to Fourth Amendment seizure.  In varying ways, all of the plaintiffs inside the apartment were restricted in their freedom of movement.  None were free to leave the apartment (unless, like Vaughn Scott, the police compelled it).  None could use the bathroom without an escort.  None could engage in their normal activities.  Nigeria Scott was seized when she was held on the porch of the house, and when under compulsion she was removed and excluded from her own property.

## VI.    Warrantless Entry Into a Home

### A. The Legal Standard

31.     Government intrusion into a home, including to make an arrest, without a warrant is presumptively unconstitutional.  *See Payton v. New York*, 445 U.S. 573 (1980).  "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *See Loria v. Gorman*, 306 F.3d 1271, 1283 (2d Cir. 2002).  Absent exigent circumstances, the threshold to a home "may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590.  Even an invasion of a "fraction of an inch is too much to be tolerated." *Lo*ria, 306 F.3d at 1284 (quoting Kyllo v. United States, 533 U.S. 27, 37 (2001)).  The government bears the burden to prove exigent circumstances.  *See Howard v. Town of Dewitt*, 5:12-cv-870, 2015 U.S. Dist. LEXIS 64947, *31 (N.D.N.Y May 19, 2015).  Probable cause is also an affirmative defense which the government bears the burden to prove.  *See Dickerson v. Napolitano*,

604 F.3d 732, 751 (2d Cir. N.Y. 2010) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)).  *Accord Howard v. Town of Dewitt*, 2015 U.S. Dist. LEXIS 64947 (N.D.N.Y May 19, 2015).

32.     At any point where police officers learn that they are not privileged to be inside a home, it is their obligation to leave.  *See Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 293 (S.D.N.Y. 2015)(Karas, J.)..  Where police fail to leave upon learning that their presence is not privileged, they become trespassers.  *See id*.

33.     The Fourth Amendment protection accorded to the home includes the curtilage of the home, that is the "area to which extends the intimate activity associated with the sanctity of a person's home and the privacies of life."  *United States v. Hayes*, 551 F.3d 138, 146 (2d Cir. 2008).  In order to determine whether an area is included in the curtilage of a home and, thus, entitled to the same privacy protections as the home, the courts examine several factors, which are "(1) the area's proximity to the main residence; (2) any enclosure of the property or area; (3) use of the property or area; and (4) steps taken to protect the property or area from view." *Hayes*, 551 F.3d at 146.  The Second Circuit applies these factors and further evaluates curtilage with an objective question, "'whether society would recognize the particular area claimed as within the curtilage of the home,'" and a subjective question, "'whether the defendant has manifested a subjective expectation of privacy in that area.'" *Hayes*, 551 F.3d at 146 (quoting *United States v. Titemore*, 437 F.3d 251, 258 (2d Cir. 2006)).  "The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" *Florida v. Jardines*, 133 S. Ct. 1409, 1414-1415 (2013).

**CONSENT TO ENTER AN APARTMENT MUST BE UNANIMOUS**

34.     While an authorized person can consent to police entry into a home, "the consent to conduct a warrantless search of a residence given by one occupant is not valid in the face of the refusal of another occupant who is physically present at the scene to permit a warrantless search." *Georgia v. Randolph,* 547 U.S. 103, 114-115 (2006).

### EXIGENT CIRCUMSTANCES REQUIRE BOTH KNOWLEDGE AND URGENCY

35.     The test for determining whether a warrantless entry is justified by exigent circumstances is an objective one based on the totality of circumstances known to the officers at the time of entry. Courts consider "the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action." *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011) (internal quotations and citations omitted). The Supreme Court has stated that

> [T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see, e.g., *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden*, 387 U.S. 294, 298-299 (1967) (same); *Schmerber v. California*, 384 U.S. 757, 770-771 (1966) (destruction of evidence); *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (ongoing fire). *Welsh v. Wisconsin*, 466 U.S. 740, 749-750 (1984).

36.     In analysis, the Second Circuit often turns to the factors set forth in *Dorman v. United States*, 140 U.S. App. D.C. 313, 435 F.2d 385, 391 (D.C. Cir. 1970) (in banc)). The Dorman factors have been summarized as follows:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause . . . to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry. *United States v. Reed*, 572 F.2d 412, 424 (2d Cir. N.Y. 1978) (quoting *Dorman*, 435 F.2d at 392-93).

37.     A warrant to search for a premises founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Harman v. Pollock*, 446 F.3d 1069, 1086 (10th Cir. Utah 2006). However, no such authority exists where the search itself is unconstitutional. *See Green*, 96 F. Supp. 3d at 294. Furthermore, such authority does not extend to anything more than a "limited security search." *Rivera v. United States*, 928 F.2d 592, 606-607 (2d Cir. N.Y. 1991). "[T]here must be probable cause, or at least some degree of particularized suspicion, to justify further searches or seizures of individuals who are neither named in the warrant nor arrested as a consequence of the search." *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91-94 (1979))..

38.     Even possession of a search warrant for a premises, for example, will not normally authorize strip searches – by their very nature a "highly intrusive invasion" -- of the occupants of the premises. *Id. Accord Green*, 96 F. Supp. 3d at 292.

**B. Application to the Present Case**

39.     It is undisputed that there was no warrant for entry. It is undisputed that even if Brenda Scott gave consent to entry, multiple other residents of the apartment expressly denied entry. Thus, there was no effective consent to enter. The police arrived entered the curtilage of 328 South Second Avenue, and then the plaintiffs' apartment without any information to connect them to the people seen entering white van more than 20 minutes earlier. Those people could have been anywhere, including next door at 324 South Second Avenue, which is the address where the police found the van parked.

40.     While it is clear that someone, several blocks away and more than 20 minutes earlier, had possessed a gun, there was no reason to believe that the gun was possessed by anyone inside 328 South Second Avenue when the police entered. And

even if there were some reason for such a belief, "mere suspicion or probable cause for belief of the presence of a firearm does not, on its own, create urgency" sufficient to conjure up exigent circumstances. *Harris v. O'Hare*, 770 F.3d 224, 236 (2d Cir. Conn. 2014) (citing *United States v. Simmons*, 661 F.3d 151, 156-57 (2d Cir. 2011)). The police lacked a basis to enter without a warrant. Because the entry was unlawful all searching of persons and property within was also unlawful (as this Court ruled in Green).

## VII.  False Arrest

### A.  The Legal Standard

#### THE ELEMENTS OF THE CAUSE OF ACTION

41.     The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law, and they are as follows: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. N.Y. 1996). *See also Broughton v. State*, 37 N.Y.2d 451, 456 (1975).

#### PROBABLE CAUSE IS AN AFFIRMATIVE DEFENSE

42.     A § 1983 claim for false arrest "derives from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151-152 (2d Cir. N.Y. 2006) (citing *Weyant*, 101 F.3d at 852). A warrantless arrest is "presumptively unlawful." *Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011)(citing *Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 3d Dep't 2010)).

The existence of probable cause constitutes an affirmative defense to a false arrest claim. *See id*.

43.     "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). The court looks to the law of the state in which the arrest occurred in order to determine the existence or non-existence of probable cause. *See Jaegly v. Couch*, 439 F.3d 149, 151-152 (2d Cir. N.Y. 2006). *Accord Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."

### DEFENDANTS BEAR THE BURDEN TO ESTABLISH THE EXISTENCE OF PROBABLE CAUSE

44.     As the Second Circuit has held: "When an arrest is not made pursuant to a judicial warrant, the **defendant** in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. N.Y. 2010) (emphasis added) (citing *Broughton v. State,* 37 N.Y.2d 451, 458 (1975)). *See also Ackerson v. City of White Plains,* 702 F.3d 15, 19 (2d Cir. N.Y. 2012) (stating that probable cause is an "affirmative defense"); *Trueman*, 451 Fed. Appx. at 29 (same). *See also Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455, 12-14 (S.D.N.Y. May 28, 2008) ("where the arrest is made without a warrant, the government bears the burden of establishing probable cause")( citing *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y. 1996)).

45.     As explained in <u>Broughton</u>:

> Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful. The cases uniformly hold that where the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority, it is not necessary to allege want of probable cause in a false imprisonment action. Indeed, the burden is on the defendant to prove the opposite. … As a matter of pleading the defendant has the burden of proving legal justification as an affirmative defense and the defendant will be precluded from introducing such evidence under a general denial. *Broughton*, 37 N.Y.2d at 458.

### B. Application to the Present Case

46.     The plaintiffs' seizure were of sufficient duration to rise to the level of an arrest. The defendants lacked a warrant or probable cause. Kraig Utley, being handcuffed, was especially clearly subjected to an arrest. Corey Marrow clearly did not violate any law by telling police officers to cease their unlawful occupation of his home. His arrest two days later was unlawful. The elements of both federal and state law false arrest are met for each plaintiff.

## VIII. Failure to Intervene

### A. The Legal Standard

47.     However, personal involvement is neither an element of, nor a requirement for, a claim for failure to intervene. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). "The requirement that an officer be personally involved in the arrest distinguishes a false arrest claim from a failure-to-intervene claim relating to an arrest, which imposes liability on an officer who is not personally involved in an arrest but nevertheless knew that an arrest lacked probable cause and did nothing to prevent it." *Garnett v. City of New York*, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) (citing *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009), *Anderson v. Branen*, 17

F.3d 552, 557 (2d Cir. 1994) and *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005)).

### B. Application to the Present Case

48.     Each of the individual defendants had requisite knowledge of the obvious illegality of the police entry and remaining in the home, that they were duty bound nor merely to refrain from their own misconduct (which duty they failed to meet), but to prevent the wrong doing of the others. Thus, Defendant Sexton should have prevented the wrongdoing of Antonini, and Briley the wrongdoing of both Sexton and Antonini, etc.

## IX.    Respondeat Superior

### A. The Legal Standard

49.     Under New York State law, "municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees*." Lepore v Town of Greenburgh*, 120 A.D.3d 1202, 1204 (N.Y. App. Div. 2d Dep't 2014).   The doctrine of *respondeat superior* "renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment, even if the duties were done irregularly or with disregard of instruction." *Ray v. Metropolitan Transp. Auth.*, 221 A.D.2d 613, 615 (N.Y. App. Div. 2d Dep't 1995).

### B. Application to the Present Case

50.     There can be no doubt that the actions of the police in this case were performed in the course of their duties.  Accordingly, the City of Mount Vernon is directly liable for the state law claims, such as false arrest.

## X. Conclusion

51.     For the foregoing reasons, the Court should award judgment on liability in favor of the plaintiff against all individual defendants for Claims one, Claim Two, Claim Three, and Claim Four, and against the City of Mount Vernon for Claim Eight.

DATED:          New York, New York
                April 8, 2016

                                    Respectfully submitted,


                                    _____//s//_____
                                    DAVID A. THOMPSON [DT 3991]
                                    STECKLOW & THOMPSON
                                    ATTORNEYS FOR PLAINTIFF
                                    217 Centre Street, 6th Floor
                                    Phone: (212) 566-8000
                                    Fax:    (212) 202-4952
                                    dave@sctlaw.nyc