UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - X

VAUGHN SCOTT, NIGERIA SCOTT,
PRINCE SCOTT, ANDREE HARRIS,
BRENDA SCOTT, KRAIG UTLEY, COREY MARROW,
AS A MINOR CHILD, K.M., A MINOR CHILD,
AND JULIAN RENE,



        Plaintiffs,

    -against-
                      14-CV-4441(SHS)

CITY OF MOUNT VERNON, ET AL.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - X

HELD AT:    Office of Corporation Counsel
            1 Roosevelt Square
            Mount Vernon, New York 10550
            December 7, 2015
            3:30 p.m.

       Examination before Trial of the Plaintiff, NIGERIA SCOTT, pursuant to Court Order, held at the above time and place before a Notary Public of the State of New York.

           J & L REPORTING SERVICE
             of Westchester, Inc.
       50 Main Street, Suite 1000
      White Plains, New York 10606
             (914) 682-1888
           Lisa Dobbo, Reporter

A P P E A R A N C E S:

    STECKLOW COHEN & THOMPSON, PLLC
    Attorneys for the Plaintiffs
    Office & Post Office Address
    217 Centre Street, 6th Floor
    New York, New York 10013
    BY:  DAVID ALLEN THOMPSON, ESQUIRE

    THE OFFICE OF CORPORATION COUNSEL
    Attorneys for the Defendants
    Office & Post Office Address
    1 Roosevelt Square
    Mount Vernon, New York 10550
    BY:  WELTON K. WISHAM, ESQUIRE
        Of Counsel

2   20th, 2013 correct?

3          A.   Yes.

4          Q.   Approximately what time did

5   they arrive?

6          A.   I'm not sure.

7          Q.   I believe it was about 5:30 or

8   6:00 in the evening; does that help you

9   recall the events?

10         A.   I'm not sure of the time.

11         Q.   Did you sign any consent for

12  the police officers to search your vehicle?

13         A.   Yes.

14         Q.   Before you signed the consent,

15  do you recall what officer asked you to sign

16  a consent?

17         A.   I'm not sure of his name, no.

18         Q.   Did you have a telephone

19  conversation with the Mount Vernon Police

20  Department prior to the officers entering

21  your apartment at 328?

22         A.   No.

23         Q.   You never had any conversation

24  with any police officers?

25              MR. THOMPSON:  Objection.

2           MR. WISHAM:  You can answer if
3       you can recall.
4       A.    I can't recall.
5       Q.    I'm going to show you what's
6  been marked as Defendant's Exhibit G and H,
7  two different documents.
8                   (Handed)
9       Q.    Did you have an opportunity to
10 review them?  I showed to your attorney, as
11 well.
12      A.    Okay.
13      Q.    Exhibit G at the top, can you
14 read what it says at the top of the page?
15      A.    The document says "Voluntary
16 Waiver to Search and Seize."
17          MR. WISHAM:  No, I think you're
18      looking at Exhibit H; Exhibit G, the
19      other page.
20      A.    The document says "Evidence"
21 Mount Vernon Police Department.
22      Q.    Can you read the incident
23 number?
24      A.    The document says 139571.
25      Q.    That's the incident number;

2   correct?
3          A.   That's what the document says.
4          Q.   And it says evidence recovered.
5   Can you read where it says the place
6   where the evidence was recovered?
7          A.   The document says the
8   department -- I can't read that.  I think it
9   says --
10         Q.   Do you see in bold it says
11  place evidence recovered?
12         A.   Yes.
13         Q.   Go ahead.
14         A.   The document says 328 S. 2nd
15  Avenue.
16         Q.   And above that, evidence
17  description?
18         A.   The document says evidence
19  description occupant's search warrant.
20         Q.   You indicated earlier that you
21  did consent for the police officer to search
22  your vehicle?
23         A.   Yes.
24         Q.   Can you describe the type of
25  vehicle that you owned on March 20th, 2013?

          A.    I can't recall.  I can't recall
the exact -- I can't recall.
          Q.    Do you recall the color of the
vehicle that you owned on March 20th, 2013?
          A.    White.
          Q.    Any other features that you can
recall?
          A.    It was like a Caravan.  I'm not
sure.
          Q.    It was a white minivan?
          A.    Yes.
          Q.    Do you recall how the back
windshield appeared on March 20th, 2013?
          A.    I don't recall.
          Q.    Now I'd like for you to take a
look at Defendant's Exhibit H which is the
second document in front of you.
     Can you read what it says at the top?
          A.    The document says "Voluntary
Waiver to Search and Seize".
               THE WITNESS:  The next?
               MR. WISHAM:  Yes.
          A.    I, Nigeria Scott, the
undersigned residing at 328 S. 2nd Avenue,

```
                    N. SCOTT                    11
```
Mount Vernon in the County of Westchester in
the State of New York and being 23.

    Q.    23 years of age?

    A.    Yes.

    Q.    What is your date of birth?

    A.    9-13-89.

    Q.    Do you know what this document is?

    A.    The document says it's a "Voluntary Waiver to Search and Seize", yes.

    Q.    Does it say what they searched or what the police officers searched?

    A.    Yes.

    Q.    What did the police officers search?

    A.    The document says 2001 Chevy Venture, New York registration GEN 5700 by me.

    Q.    Was that the vehicle that you owned on March 20th, 2013?

    A.    Yes.

    Q.    Is this Exhibit H dated at the bottom?

    A.    Yes.

2          Q.    What's the date on this

3    exhibit?

4          A.    The document says the 20th day

5    of March 2013.

6          Q.    Is that your signature?

7          A.    Yes, it is.

8          Q.    I would also like for you to

9    take a look at five pages and this has

10   previously been marked as Defendant's

11   Exhibit D.  I'm going to show it to your

12   counsel first.

13                    (Handed)

14         Q.    You've had an opportunity to

15   take a look at that exhibit?

16         A.    Yes.

17         Q.    The first page of the exhibit,

18   could you read what it says at the top?

19         A.    The document says Mount Vernon

20   Police Department Incident 139571 DB Case

21   Number 431 --

22               THE WITNESS:  Is that a 2A?

23               MR. WISHAM:  Okay.

24         Q.    Can you read anything else on

25   that document?  The evidence description, do

2   you see the place where it says evidence

3   description?

4          A.    Okay, the document says

5   photographs of New York registration GEN

6   5700.

7          Q.    That's your registration of

8   your vehicle, the white minivan?

9          A.    Yes.

10         Q.    Can you flip to the second

11  page, please.

12         A.    Yes.

13         Q.    Can you take a look at that

14  second page and can you identify what's in

15  front of you on the second page?

16         A.    The picture shows the window

17  gone and plastic.

18         Q.    I'm sorry?

19         A.    The window gone and plastic.

20         Q.    Is that a vehicle that you're

21  looking at?

22         A.    Yes, the document shows a

23  vehicle.

24         Q.    Is that your vehicle?

25         A.    Yes, that's a picture of my

2    vehicle.

3        Q.    You indicated that this
4    document you're looking at, your vehicle,
5    the white minivan, has plastic on the rear
6    windshield?

7        A.    Yes, the document shows that.

8        Q.    Do you know who put the plastic
9    on the rear windshield?

10       A.    No, I don't.

11       Q.    This vehicle the way it looks
12   in front of you today as a result of this
13   photo, that's the same way it looked March
14   20th, 2013?

15       A.    I can't recall.

16       Q.    Could you take a look at the
17   second document.

18       Does that document look familiar?

19       A.    I can't recall.

20       Q.    What about the third page, can
21   you describe the images that you see in that
22   third page of this document?

23       A.    The document shows tissue, a
24   beer.

25       Q.    Inside the vehicle?

2          A.    I don't recall.

3          Q.    Were you present when the

4    officers conducted the search of your van?

5    Were you there when the officers searched

6    your van?

7          A.    Well, no.

8          Q.    Where were you?

9          A.    I wasn't with the vehicle.  I

10   was on the porch.

11         Q.    You weren't inside 328 S. 2nd

12   Avenue?

13         A.    No.

14         Q.    Did you ever enter the

15   apartment 328 S. 2nd Avenue?

16               THE WITNESS:  Are you asking me

17         ever period?

18         Q.    Did you enter -- you indicated

19   that you were on the porch during the time

20   the police officers conducted the search.

21         A.    Yes.

22         Q.    Did you enter the apartment 328

23   S. 2nd Avenue upon you being on the porch?

24   On that day, did you enter the inside of 328

25   S. 2nd Avenue?

porch.

Q. And did you?

A. Well --

THE WITNESS: This is going to be too much.

A. I was on the porch at the time that you asked about with the search but prior I was told to get off the porch so before that I was off the porch but I was there like before this happened.

Q. At the time you were told to get off the porch, did you get off the porch?

A. Yes.

Q. Where did you go?

A. I went a couple houses down.

Q. You went to another residence?

A. I was just standing outside.

Q. Outside 328 S. 2nd Avenue?

A. No, I was standing outside another address; a couple houses down and I just stood there.

Q. How long did you stand there?

A. For awhile. I don't recall the

```
 1                    N. SCOTT                    20
 2           Q.    Did the officers have any
 3   communication with you other than to ask you
 4   if you would allow them to search your
 5   vehicle?
 6           A.    Yes, when I first came home
 7   they told -- I came in contact with the
 8   officer and I was told that I can't get in
 9   and I had to stay outside.
10           Q.    Why are you bringing this
11   lawsuit?
12                 THE WITNESS:   Excuse me?
13           Q.    Why are you suing the Mount
14   Vernon Police Department?
15           A.    I feel like my rights were
16   violated.
17           Q.    How?
18           A.    I had to stay outside of my
19   home against my will.   I was told.   I was
20   with my niece.
21           Q.    Were you injured as a result of
22   the officers forbidding you from entering
23   your apartment and having to stay outside in
24   the cold?
25                 THE WITNESS:   Injured meaning
```

2          how was I hurt?

3                  MR. WISHAM:  Yes.

4          A.      Like hurt, no, I wasn't hurt.

5          Q.      Were you injured in any other

6     manner?

7          A.      I believe so.

8          Q.      How?

9          A.      Everything.  I couldn't go

10    inside.  I was cold.  It was just -- that

11    shouldn't have been done to me.

12         Q.      Any other injuries you

13    sustained other than not being able to enter

14    the apartment and having been told to stand

15    out in the cold, anything else?

16         A.      That's it -- I was talked to

17    disgusting.  They had no respect.

18         Q.      Do you recall what they said to

19    you?

20         A.      I don't.  I know it was nasty

21    and left a bad impression.

22         Q.      Have you seen those officers

23    since March 20th, 2013?

24         A.      Yes, I did.

25         Q.      When did you see them?

A. Yes.

Q. Who was in the apartment at that time, Julian Rene?

A. I don't recall. At the time I got there I remember speaking to one person but there was people there.

Q. Who was that one person there that you were speaking to?

A. My mother.

Q. Your mother's name?

A. Vaughn.

Q. Vaughn Scott?

A. Yes.

Q. What conversation did you have with Vaughn Scott?

A. A simple one. I asked her did she happen to know why me and my niece was outside for so long and couldn't come in.

Q. What was her response to you?

A. She just said, you know, the police were here and they wasn't letting no one in or no one out.

Q. Did she tell you why?

A. She didn't tell me why because

by the time -- no, she didn't tell me why.

Q. Did you ever find out why the police were there?

A. I mean I heard different stories but I don't know.

Q. What stories did you hear as to why the police entered your apartment on 3-28-2013, what did you find out?

A. I don't recall everyone's story. I don't recall. I don't know.

Q. But do you recall any, do you recall right now why the police entered your apartment at 328 S. 2nd Avenue on March 20th, 2013?

MR. THOMPSON: Objection.

A. No, I don't.

Q. No one told you that Julian Rene had been shot earlier in the day at -- no one had told you the police were there to investigate a prior shooting and a white minivan was at the scene of the shooting, no one told you that?

MR. THOMPSON: Objection to form.