UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

VAUGHN SCOTT, NIGERIA SCOTT, PRINCE SCOTT,
ANDREE HARRIS, BRENDA SCOTT, KRAIG UTLEY,           **STATEMENT PURSUANT**
COREY MARROW, A.S. A MINOR CHILD,                   **TO LOCAL RULE 56.1**
K.M. A MINOR CHILD, AND JULIAN RENE,
                                                    14 CV 04441 (K.M.K)
                    Plaintiffs,

        -against-

CITY OF MOUNT VERNON, A MUNICIPAL ENTITY,
MT. VERNON POLICE OFFICER ALLEN,
MT. VERNON POLICE OFFICER CAMILO ANTONINI,
MT. VERNON POLICE OFFICER TIMOTHY BRILEY,
MT VERNON POLICE OFFICER DET. BRENT GAMBLE,
MT. VERNON POLICE OFFICER SGT. STEVEN SEXTON,
CITY OF MT. VERNON POLICE DEPARTMENT, AND
POLICE OFFICERS JOHN DOES 1-10.

                    Defendants,
_____X

Defendants, City of Mount Vernon, New York, MT. Vernon Police Officer, Allison Allen, MT. Vernon Police Officer, Camilo Antonini, MT. Vernon Police Officer, Timothy Briley, MT Vernon Police Officer Det. Brent Gamble, MT. Vernon Police Officer Sgt. Steven Sexton, Mount Vernon Police Department, and Police Officers John Does 1-10, hereby submit their Local Rule 56.1 Statement in support of their motion seeking summary judgment to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 56 and this Court's Individual Practices.

  1.  On March 23, 2013, at approximately 18:17 (6:17 pm), The Mount Vernon Police Department received a telephone call from a complainant who indicated that she had heard two shots fired, and had seen a white van with three males , one with a red cap, and two others dressed in black going down South 9th Ave. in the white van. See City of Mount Vernon's Live Aeigs Public Safety System Incident Report March 23, 2013, annexed to the Declaration of Welton K. Wisham (the Wisham Decl.) as **Exhibit " B".)**

  2.  At approximately 18:26, (6:26pm) the Mount Vernon Police Department received a second phone call from a male caller who informed the police that he had seen a light skin male, with a red

hoodie , run towards Ebony Gardens opposite 70 West 3rd street.   See City of Mount Vernon's Live Aeigs Public Safety System Incident Report, (annexed to the Wisham Decl. as **Exhibit "B")**

3.   Several police  units were dispatched to the area where the shots were reportedly fired at 215 South 9th street, Mount Vernon, New York.  The incident was logged in by the Mount Vernon Police Department, and assigned Incident # 2013-00009571.  See City of Mount Vernon Live Aeigs Public Safety System Incident Report, annexed to Wisham Declaration as **Exhibit" B".**

4.   Plaintiff Corey Marrow was the driver of the white van.    See Cory Marrow's Dep. (annexed to Wisham Decl. as **Exhibit No." 14"**, at 19:7-10. ("I was driving past; I didn't know it was a shooting".)

5.  Corey Marrow was the driver of the white van near the location of the shooting.  See Cory Marrow Deposition annexed hereto as **Exhibit No. "14",** at 19:7-10, 22:8-12.

6.   Corey Marrow testified that Julien Rene admitted to him that he heard shots in the vicinity of 7th Ave and 3rd Street.   See Cory Marrow's Dep. (annexed to Wisham Decl. as **Exhibit No. "14"**, at 23:12-21.

7.   Julien Rene was shot by a bullet fired near the vicinity of 7th Ave and 3rd street.  See Corey Marrow Deposition annexed to Wisham Decl. as **Exhibit No."14",** at, 21:25, 22:2-13, 23:3-11.

8.  Julien Rene was the black male running into the white van driven by Corey Marrow, **Exhibit "No. 14"** ,at 23:3-11, 23:23-25, 24:2-12

9.   Corey Marrow admitted that he had driven his sister's white 2001 Chevy to the Fourth Street Park and that the van's rear windshield was covered with plastic. See Corey Marrow 5o-H Transcript (annexed to the Wisham Decl. as **Exhibit ""F"**, at 9: 20-22, 12: 21-25, 13:2-7, 13:8-16, 19-24.

10.  Plaintiff Corey Marrow also admitted that he drove to the park with Plaintiff Kraig Utley. **Exhibit" F",** at 14:22-25.

11.   Corey Marrow also stated that Demetrius (King) was inside the car with Corey at the time the shots were fired.  See Corey Marrow 50-H transcripts (annexed to Wisham Decl. as **Exhibit "F".** 17:11-18, 18:2

12. Corey Marrow admitted that he parked his sister's white van in his driveway. **Exhibit "F"**, at 25:19-25.

13. Sargent Steven Sexton was one of several police officers who responded to the call of shots fired and who was called to conduct a criminal investigation of an assault with a handgun . Sexton was dispatched to 328 South 2nd Ave. on March 20, 2013 ,as a result of a radio transmission he received which had indicated to him that a vehicle possibly involved in a shooting was located at this address. See Sexton Deposition (annexed to Wisham Decl. as **Exhibit No. "1"**,at 11:12-15, 21-25, 12:1-3, 13:2-4.

14. Officer Gregorio had informed Sargent Sexton that the vehicle possibly involved in the shooting had been located at 328 South 2nd Ave. See Sexton Deposition annexed hereto as **Exhibit No."1'**, at 12:13-15.

15. Prior to arriving at 328 South 2nd Ave., Sargent Sexton had received information via radio transmission that suspects from the shooting had entered a white van and had driven off. See Sexton Dep. annexed to Wisham Decl. as **Exhibit "No."1", at** 13:6-17.

16. Sexton was made aware of the fact that shots had been fired in the vicinity of 9th Ave., and Third Street near Levister Towers. See Sexton Deposition annexed hereto as **Exhibit No."1",** at 13:18-22.

17. Sexton was aware of earlier reports by local residents who had called the Mount Vernon Police Department stating that "shots had been fired". See Sexton Dep. annexed to Wisham Decl. as **Exhibit No."1"** at, 14:1-14.

18. Sgt. Sexton was in possession of information prior to his arrival at 328 South 2nd Ave, of the fact that shell casings had been recovered at the location of the shooting and that there was evidence of a crime scene where shots had been fired. See **Exhibit No."1"**, at 15:17-25, 16:1-2.

19. Officer Gregorio had informed Sgt. Sexton that the vehicle Sexton was responding to was the same vehicle that had been reported at the location of the earlier shooting, and that the windshield was missing, and that the vehicle was still warm. See Sexton Deposition transcript annexed to Wisham Decl. as **Exhibit No."1",** at 17:6-14.

20. Upon arriving at 328 South 2nd Ave, Sgt. Sexton knocked on the door and was met by a woman who informed Sexton that the van in the driveway was owned by her daughter who lived there at 328 South 2nd Ave. See Sexton Deposition annexed hereto as **Exhibit "No. "1",** at 17:17-19, 21:7-25.

21. The van which had earlier been spotted at the location of the shooting was found parked in the driveway at 328 South 2nd Ave. See Sexton Deposition annexed hereto as **Exhibit No."1"**, at 19:5-7.

22. When Sexton arrived at 328 South 2nd. Ave. he informed the women who opened the door for him, that Sexton wanted to know if anyone in the apartment had been wounded because of the information Sexton had received from a called that shots had been fired, and that the vehicle at the scene of the shooting was found parked at 328 South 2nd Ave. **Exhibit No. "1"**,at 24:3-16.

23. Sexton testified that he was looking for possible victims of the shooting, and " an additional crime scene. See Sexton Deposition transcript annexed hereto as **Exhibit No. "1",** at 24:18-21.

24. The woman who opened the door at 328 South 2nd Ave. was cooperative with Officer Sexton when she initially opened the door, and gave Sexton consent to enter her apartment. See Sexton Deposition annexed hereto as **Exhibit No."1"**, at 24:22-25, 25:1-4.

25. Prince Scott appeared at the door and began yelling and threatening Sgt. Sexton, and began to interfere with Sexton's criminal investigation: See Sexton Deposition annexed hereto as **Exhibit No "1"**, at 25:10-25, 26:1-14.

26. Sexton immediately recognized Corey Marrow who was present at 328 South 2nd Ave. Sexton testified that he had had "numerous interactions with (Corey Marrow) and that the whole crew is actually one of the local gangs who are responsible for a lot of the violence in the community". See Sextons' deposition transcript annexed to Wisham Decl. as **Exhibit No. "1",** at, 29:4-9.

27. Sexton further testified that he also knew Julien Rene, Demetrius Royal and that the "apartment was actually **loaded up with the actual gang, the crew, the Gunners is the name of the gang.**" See Sexton's deposition annexed as **Exhibit "1"**,at 29:24-25, 30:1-8, 31:3-7.(emphasis added)

4

28. Sgt. Sexton's knowledge that Kraig Utley, Corey Marrow, and Demetrius Royal were members of a gang known as the "Gunners" was obtained through "Intel of the Westchester County Police". **Exhibit " No "1",** at 31:8-17.

29. Prince Scott, Corey Marrow, Kraig Utley, and Demetrius Royal, had been arrested prior to March 20, 2013, and Sexton was aware of this this fact. **Exhibit No. "1",** at32:6-12.

30. Sargent Sexton entered the premises at 328 South 2nd Street (the premises) based on his reasonable belief that someone within the premises had been shot based on information which he had received by the Mount Vernon Police Department via radio transmission. **Exhibit No. "1",** at 34:12-19

31. When Sexton entered the premises he learned in fact that Julien Rene had been shot or grazed in the buttocks by a bullet. See **Exhibit No. "1"**, at 34: 23-25, 35:1-4. Sexton also knew that some of the individuals in the premises were known for "weapons possession or violent acts" **Exhibit No. "1", at** 36:7-12.

32. Julien Rene admitted to Sexton that he had been in the area of the shooting. See Sexton Deposition annexed hereto as Exhibit **No. "1",** at 35:1-14.

33. Based on Sexton prior knowledge that some of the occupants were previously involved in violent acts, and weapons possession, Sexton conducted a limited search for weapons. **Exhibit No."1",** at 35:25, 36: 1-12.

34. Detective Castellano was also present at the premises according to Sexton. **Exhibit No."1"**, at 39:7-16.

35. Sexton sought approval for an application of a search warrant. **Exhibit "1", at** 39: 21-25, 40:1.

36. Sexton testified that a detective supervisor also believed that a search warrant could have been approved based on the evidence known to Sexton, and the Mount Vernon Police Department. See **Sexton** Deposition annexed hereto as **Exhibit No. "1"**,at 40:3-11.

37. The officers remained inside the premises for approximately 3-4 hours. See Sexton Deposition annexed to Wisham Decl. hereto as **Exhibit No. "1", at** 40:24-25, 41:1- 3.

38. Sargent Sexton also gave testimony that he believed that there could have been a weapon in the house. See Sexton Deposition annexed to Wisham Decl. as **Exhibit No. "1"**, at 43:14-18.

39. Upon Sexton's entry into the premises, Sexton found individuals hiding in a back room. Sexton ordered those individuals to come out and gather into the living room. Sexton then proceeded to conduct a limited search of the premises for weapons, and for any victims. See Sexton Deposition annexed to Wisham Decl. as **Exhibit No. "1"**, at 46:22-25, 48:22-25, 47:8-9.

40. The individual occupants of the premises were ordered into the living room for the safety and protection of the police officers. See Sexton's Deposition annexed hereto as **Exhibit No. "1", at** 48:25, 49:1-3.

41. Detective Gamble was not present inside of the occupant's apartment. See Sexton Deposition annexed as **Exhibit No. "1", at** 49:7-12.

42. None of the occupants at 328 South 2n Ave. were arrested on March 20, 2013. **Exhibit No. "1",** at 52:13-14.

43. No doors were broken by any of the officers present during the search of the premises. See Sexton Deposition annexed as **Exhibit No. "1"**, at 53:15-17.

44. The occupants of the premises were never physically touched by any Mount Vernon Police Officers. See Sexton Deposition annexed as **Exhibit No. "1"**, 83:8-15.

45. Julien Rene voluntarily pulled his pants down to show the officers his injuries from being gazed by a bullet on 9th street and Third Ave. Sexton Deposition **Exhibit No. "1",** at 83:17-23, 84:1-25 .

46. Officer Camilo Antonini admitted during his deposition testimony that he was part the responding Mount Vernon Police Officers who arrived at the scene at 328 South 2nd Ave., on March 20, 2013, to investigate a reported shooting that had occurred earlier at 7th and 3rd street. See Dep. Camilo Antonini annexed to the Wisham Decl. as **Exhibit No."3",** at 19:19-21, 26:20-25, 27:1-7.

47. Officer Antonin entered the occupants' living room where he met other officers who were also part of the investigation. **Exhibit No."3",** at 22:3-5.

48. Antonini testified that upon entering the premises he immediately recognized Demetrius Royal King, James Haugh, Corey Marrow, Julien Rene, Kraig Utley, and Prince Scott, as individuals with whom officer Antonini had arrested in the past for "**possession of drugs, gang affiliation, and parties being investigated for shootings, narcotics those type of crimes in the city**". See Deposition of Camilo Antonini annexed to Wisham Decl. as **Exhibit No."3,**" at 23:3-12.(emphasis added)

49. There was no physical contact made between the police officers present within the said premises towards the occupants. See Deposition of Camilo Antonini annexed hereto as **Exhibit No." 3",** at 26:5-9.

50. Officer Antonini knew some of the occupants in the premises as being members of a gang known as "the Gunners". See Deposition of Camilo Antonini annexed hereto as **Exhibit No. "3",** at 28:13-25.

51. Plaintiff Prince Scott was known by officer Cameo Antonini from information officer Antonini obtained through the Mount Vernon Police Department 's Narcotics unit, and from the Westchester County Intel Center. See Deposition of Camilo Antonini annexed hereto as **Exhibit No. "3"**, at 28:13-25. (They provide us with up to date information of all gang activities throughout the whole county of Westchester, including the city of Mt. Vernon. The six parties that I mentioned to you are all part of a gang named the Gunners. The Third Street Gunners, Okay. Which have all been involved in shootings throughout out the city"). See Deposition of Camilo Antonini annexed hereto as **Exhibit No. "3"**, at 26:1, 29:1-4.

52. Officer Antonini believed that exigent circumstances existed at the time he entered the premises at 328 South 2nd Ave., based on the fact that other officers were present within the premises. See Deposition of Camilo Antonini annexed hereto as **Exhibit No."3",** at 38:21-25, 39:1.

53. Officer John Gamble was named as a defendant to the instant action yet he testified that he was not connected in any way to the investigation involving the shooting which occurred on March 20, 2013, at 7th Ave. Gamble also testified that he was never present at the premises located at 328 South 2nd Ave, nor was he involved in the detention of the Plaintiffs. See Deposition of Officer John Gamble annexed to the Wisham Decl. as **Exhibit No."4",** at 10:20-25,11:2-20, 12:5-25,13:2-24,15:10-13, 18:23, 16:2-10.

54. Officer Allison Allen also responded to a radio transmission from the Mount Vernon Police Department which called for her assistance at 328 South 2nd Ave. Officer Allen arrived at the premises at approximately 6:00pm. See Deposition of Officer Allison Allen annexed to Wisham Decl. as **Exhibit No. "2 "**, 10:6-13, 11:10-22.

55. When Officer Allen arrived she was met by several police officers who were standing both outside and inside of the Plaintiff's apartment. See Deposition of Officer Allen annexed to Wisham Decl. as **Exhibit"2", a**t 11:23-25, 12:1.

56. Allen was dispatched to the premises after she received a radio transmission that shots had been fired, and that a white minivan with a "busted out window was parked in the driveway of 328". See Deposition of Allison Allen annexed hereto as **Exhibit No."2"**, at 12:3-12.

57. Prince Scott, and Corey Marrow, were cursing Officer Allen, and the other officers during the officer's investigation conducted inside the premises of 328 South 2nd Ave. See Deposition of Officer Allison Allen annexed to Wisham Decl. as **Exhibit "2",** at, 15:21-25, 16:3-7, 23-25.

58. Neither Officer Allen, nor any of the other officers present at the scene of 328 South 2nd Ave., had physical contact with any of the occupants during the course of the officer's investigation of a prior shooting which led to the premises in search of any victims of the shooting that may have been shot and required medical attention. Allen was "just standing inside of the living room of the apartment protecting the other officers. See Deposition of Allison Allen annexed as **Exhibit"2"**, at 19:1-17.

59. Allison Allen witnessed Julien Rene voluntarily pull down his pants for about a few seconds to show the officers exactly where he had been shot. None of the police officers on the scene of 328 South 2nd Ave., engaged in any form of force which caused Julien Rene to pull down his pants in front of his family. See Deposition of Officer Allen annexed to Wisham Decl. as **Exhibit No."2",** at 31:8-1031:11-17.

60. When Officer Allen arrived in inside the residence of 328 South 2nd Ave., she maintains that the other officers inside the premises were just standing in the living room. The officers were not harassing nor were they engaged in any physical use of force against the occupants. No physical contact occurred

8

between the police and the occupants. See Deposition of Officer Allison Allen annexed to Wisham Decl. as **Exhibit No. "2"**, at 21:3-6.

61. All the officers who responded to the scene at 328 South 2nd Ave, were there as a direct result of the official radio communications which commenced their investigation of a prior shooting, and that a car had sped off from the scene of the shooting and was found parked in the plaintiff's driveway located at 328 South 2nd Ave. See Deposition of Allison Allen annexed as **Exhibit No"2",** at 20:12-24.

62. Officer Timothy Briley also received a radio transmission from the Mount Vernon Police Department alerting Briley to the fact that an individual had been shot in the vicinity of Fifth Ave and Third Street on March 20, 2013. See **Exhibit No."5 ",** Deposition of Timothy Briley, annexed to Wisham Decl. at 9:10-16.

63. Officer Briley was also informed via a radio transmission that "the injured party was placed inside the vehicle". See Briley Deposition annexed to Wisham Decl. as **Exhibit No "5",** at 9:18-24.

64. Briley responded by canvassing the area searching for the moving vehicle that matched the description dispatched by the radio transmission. See Deposition of Timothy Briley annexed to Wisham Decl. as **Exhibit No."5",** at 10:23-25, 11:1-2.

65. When officer Briley arrived at 328 South 2nd Ave, he was met by several other police officers from the City of Mount Vernon Police Department who were inside the apartment occupied by the Plaintiffs. See Briley Deposition annexed as **Exhibit No."5",** at 11:11-25.

66. Briley was inside 328 South 2nd Ave for approximately thirty to forty five minutes. See Briley Deposition annexed to Wisham Decl. as **Exhibit No."5,** at 25:8-10.

67. Officer Briley was ordered by his immediate supervisor Sgt. Steven Sexton to remain in the occupant's apartment until he was no longer needed. See Deposition of Briley annexed as **Exhibit No."5"**, at 25:16-25, 26:1-5.

68. Officer Briley observed **Prince Scott's mother laughing back and forth with Sgt. Sexton d**uring the time Briley was inside the apartment occupied by the Plaintiffs.  See Deposition of Briley annexed as **Exhibit "5",** at 46:1-15.(emphasis added

69. No physical force was used during the course of the search of the apartment occupied by the Plaintiffs on March 20, 2013.  See Briley Deposition annexed as **Exhibit No."5",** at 46:17-25, 47:1.

70. Officer Briley defined his knowledge of exigent circumstances as "immediate flight or pursuit of an individual who committed a felony".   See Deposition of Officer Timothy Briley annexed to Wisham Decl. as **Exhibit"5"**, at 66:14-25.

71. Plaintiff Kraig Utley alleged that the defendant officers were inside of his apartment for approximately three (3) hours. See Deposition of Kraig Utley, annexed to Wisham Decl. as **Exhibit No"15"**, at 14:11-14.

72. Utley was cursing the officers inside his apartment during the officers 'investigation telling Officer Antonini to ( " get the fuck out of here. This ant fucking right. You fucking harassing us"). See Deposition of Kraig Utley annexed to Wisham Decl. as **Exhibit No. "15",** at 15: 9-20.

73. Kraig Utley stated in his deposition that Officer Antonini placed handcuffs on him for the safety of officer Antonini. See Utley Deposition annexed hereto as **Exhibit No."15",**at 17:21-24.

74. Utley testified that Julien Rene showed the officers the wounds Julien sustained when he was shot on March 20, 2013.  See Utley Deposition annexed hereto as **Exhibit No. "15",** at 21: 12-19.

75. Julien Rene insisted that he was the victim of a shooting and voluntarily showed the police officers his butt cheeks. See Deposition of Kraig Utley, annexed to Wisham Decl. as **Exhibit No. "15",** at 21:20-25. (I'll show you where I got shot" ) Deposition of  Kraig Utley annexed as **Exhibit No. "15"**, at 22:2-22.

76. Utley observed Julien Rene get up from sitting on the couch, and proceeded to pull down his pants to show the officers where he had been shot on his butt cheek. Utley Deposition annexed hereto as **Exhibit No."15"**, at 23:2-8.

77. Utley confirmed the fact that Rene was "shot near the projects on 3rd Street". See Deposition of Kraig Utley annexed hereto as **Exhibit No. "15",** at 24:16-25, 25:2-4.

78. Kraig Utley was with Julien Rene at the time Julien was shot. See Deposition of Utley annexed as **Exhibit No."15",** at 25:5-7.

79. Kraig Utley ,and Julien Rene, hopped into a white minivan driven by Corey Marrow after shots were fired at Utley, and Julien Rene, March 20, 2013. See Deposition transcript of Kraig Utley annexed hereto as **Exhibit No. "15",** at 27:2-7, 25: 14-16.

80. Utley, and Julien Rene met Corey Marrow on 9th and 3rd Street, while shots were still being fired. See Utley Deposition annexed to Wisham Decl. as **Exhibit No. "15",** at 27:11-22.

81. There were six, or seven gun shots that rang out near the area of 9th, and 3rd Street, according to Kraig Utley. See Utley Deposition annexed as **Exhibit No."15"**, at 27:23-25.

82. Utley's testimony confirms earlier reports to the Mount Vernon Police Department that gun shots had been fired, and that three (3) males blacks were seen getting into a white minivan and leaving the scene of the crime. See Deposition of Kraig Utley annexed as **Exhibit No. "15",** at 28:7-10.

83. The three (3) black males drove to 328 South 2nd A ve.,shortly after the shooting. See Utley Deposition annexed as **Exhibit No."15"**,at 29:4-6.

84. None of the occupants of 328 South 2nd Ave, were arrested by the Mount Vernon police department on March 20, 2013. See Deposition of Kraig Utley annexed to Wisham Decl. as **Exhibit No. "15"**, at 30:2-4.

85. Kraig Utley had been arrested five (5) or ten (10) times prior to the March 20, 2013 incident, including resisting arrest. See Utley Deposition annexed as **Exhibit No."15",** at 31:-25, 32:2-25, 33:2-7, 40:2-8.

86. Utley was not physically injured by any of the police officers during the time of the incident cited herein on March 20, 2013. See Deposition of Kraig Utley annexed as **Exhibit No. "15",** 48:19-25.

87. Utley did not seek any treatment for his alleged mental stress as a result of his detainment by the police on March 20, 2013. See Utley Deposition annexed as **Exhibit No. "15",** at 49:8-10.

88. Utley is seeking compensation form the City of Mount Vernon as a result of the emergency which existed which led the police to enter the premises at 328 South 2nd Ave. Utley claims that "I don't trust the police". See Utley Deposition annexed to Wisham Decl. as **Exhibit No. "15",** at 50:2

89. Brenda Scott gave testimony that the police insulted her on March 20, 2013, and that the police slammed the door on her foot. See Deposition of Brenda Scott annexed to Wisham Decl. hereto as **Exhibit No."13",** at 5:17-25, 6:2.

90. Brenda Scott also gave testimony that the police knocked on her door before entering the premises. See Deposition of Brenda Scott annexed to the Wisham Decl. as **Exhibit" No. "13",** at 9:6-9.

91. The police who first appeared at the occupant's residence on March 20, 2013, informed Brenda Scott that they were there to investigate a shooting. See Deposition of Brenda Scott annexed to Wisham Decl. as **Exhibit No."13",** at 12:13-21.

92. Brenda Scott stated during her testimony that she was not physically injured by the police during the March 20, 2013, incident. See Deposition of Brenda Scott annexed to Wisham Decl. as **Exhibit No." 13",** at 15:13-16.

93. Brenda Scott revealed the fact that she had been seeing a psychiatrist for a couple of years based on her fear of walking down the streets and that she did not sustained any other form of injuries. See Deposition of Brenda Scott annexed to Wisham Decl. as **Exhibit No."13"**, at 24: 4-18, 29: 17-24.

94. Andree Harris was informed by the Mount Vernon Police Department that they were conducting an investigation of a prior shooting in which a white minivan was identified as being at the scene of the shooting. See Deposition of Andree Harris annexed to Wisham Decl. as **Exhibit No." 12,"** at 11: 15-25, 12:2-7.

95. Andree Harris admitted that the white van was owned by his sister Nigeria Scott which was parked in the driveway at 328 South 2nd Ave. on March 20, 2013. See Deposition of Andree Harris annexed to Wisham Decl. as **Exhibit No."12"** at 12:8-23.

96. Andree Harris claims his rights were violated because the police told him to empty his pockets. Mr. Harris also claims that the police pushed him in manner of which Mr. Harris did not explain. See

Deposition of Andree Harris annexed to Wisham Decl. as **Exhibit"12,**" ,at 20: 22-25, 21:2,. Mr. Harris suffered no other injuries. **Exhibit No."12"**, at 21:3-5.

97. Prince Scott admitted that he recognized one of the police officers that entered his home March 20,2013, as Officer Sargent Sexton. See Deposition of Prince Scott annexed hereto Wisham Decl. as **Exhibit No. 10**, at 8:7-24.

98. Prince Scott stated that he was previously arrested by Sgt. Sexton before the March 20, 2013, incident for domestic violence. See Deposition of Andree Harris annexed to Wisham Decl. as **Exhibit No. 10,** at 9:7-24.

99. Prince Scott also admitted during his testimony that he recognized officer Antonini before officer Antonini entered his apartment on March 20, 2013. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 12:8-11.

100. Prince Scott was arrested by Officer Antonin on several prior occasions. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No."10"**,at 12: 8-25.

101. Prince Scott was convicted of attempted assault, and possession of a controlled substance ,prior to the March 20, 2013, incident at 328 South 2nd Ave. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 14:2-9.

102. Corey Marrow, and Prince Scott are related as brothers. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 18:16-17.

103. Prince Scott resided at 328 South 2nd Ave, on March 20, 2013. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 19:11-13.

104. There were 4-5 males inside the white van driven by Corey Marrow on March 20, 2013. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit 10,** at 21:2-6.

105. Prince Scott testified that no one was handcuffed by the police during the March 20, 2013, incident. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 31:5-8.

106. Prince Scott stated that he was not physically injured by the police on March 20, 2013, during the incident during the time the police were inside his apartment on 328 South 2nd Ave. See Deposition of Prince Scott annexed as **Exhibit No. 10,** at 31:5-25.

107. Prince Scott agreed with the Mount Vernon Aeigs Report which reflects the fact that Prince Scott was arrested on May 9, 2012, by officer Antonini ,and that Officer Antonini arrested him on March 18, 2009, May 7,2011, and on July 27, 2008. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 33:9-25, 38:10-25, 39:2-22, 40:2-25.

108. Prince Scott admitted that he had prior "run ins " with officer Antonini and Officer Sexton. See Prince Scott Deposition annexed to Wisham Decl. as **Exhibit No.10,** at 42: 17-22.

109. Prince Scott testified that Julien Rene told the officers who were inside his apartment on March 20,2013, that he was the one who had suffered a gunshot wound or was glazed on his buttocks. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 46:16-25, 47:2-14.

110. According to Prince Scott, Julien Rene lifted his shirt up, and pulled his pants down to show the police officers his injuries from being shot. See Deposition of Prince Scott annexed to Wisham Decl. as **Exhibit No. 10,** at 48:2-16.

111. Nigeria Scott voluntarily gave police the authority to search her white minivan by signing a "Voluntary Wavier to Search and Seize" on March 20, 2013. See Deposition of Nigeria Scott annexed to Wisham Decl. as **Exhibit No. 9,** at 7:11-13, See also Consent Form annexed to Wisham Decl. as **Exhibit "C".**

112. Nigeria Scott admitted that the white minivan was parked in her driveway at 328 South 2nd Ave. on March 20, 2013. See Deposition of Nigeria Scott annexed to Wisham Decl. as **Exhibit No. 9,** at 8:5-25,9:4-23,, 10:4-25, 11:2-25, 12:2-7.

113. Nigeria Scott admitted that the photographs annexed as **Exhibit" D",** are those which depict her white minivan with the shatter rear windshield. **Exhibit No. 9,** at 13:4-25, 14:2-10.

114. Nigeria Scott testified that she was not detained inside the premises on March 20, 2013. See Deposition of Nigeria Scott annexed hereto as **Exhibit No. "9"**, at 16:8-12.

115. Nigeria left the porch area at the time of the search and went " a couple of houses down". Deposition of Nigeria Scott annexed as **Exhibit No. 9**, at 18:12-23.

116. Nigeria Scott admitted that she was not injured as a result of the officers not allowing her to enter the premises during the time of the police investigation. See Deposition of Nigeria Scott annexed as **Exhibit No. 9,** at 20:21-25, 21:2-17.

117. Nigeria Scott testified that she asked her mother, Vaughn Scott, if she could tell her what happen and why the police wouldn't allow her to enter the premises. Deposition of Nigeria Scott annexed to Wisham Decl. as **Exhibit No 9,** at 25:8-25.

118. According to Nigeria Scott, Vaughn Scott did not mention anything at the time to Nigeria Scott indicating to her that the police had forced their way inside the plaintiff's residence. See Deposition of Nigeria Scott annexed as **Exhibit No. 9,** at 25:25, 26:2-11.

119. Nigeria Scott was told "**different stories" as to why the police were in her apartment** on the evening of March 20, 2013. **Exhibit No. 9,** at 26:2-11.

(emphasis added)

120. Plaintiff Arabia Scott testified that she was not injured in any manner during the time the Mount Vernon Police officers entered her residence on March 2, 2013. See Deposition of Arabia Scott annexed to Wisham Decl. as **Exhibit No. "8",** at 18: 4-5, 18:10-15, 18: 18-21.

121. Kevin Marrow testified that the police who were inside his apartment at 328 South 2nd Ave, on March 20,2013, did not damage any property during the search. See Deposition of Kevin Marrow annexed to Wisham Decl. as **Exhibit No."7",** at 20"17-25, 21: 2-25. Marrow further testified to the fact that the police did not break the door. See Wisham Decl. annexed hereto as **Exhibit No. "7"**, at 21:8-9.

122. Kevin Marrow was not injured during his encounter with the police on March 20, 2013. **Exhibit No."7"**, at 22:6-7.

123. Julien Rene admitted that he had in fact been gazed by a bullet on March 30, 2013, near the projects between 9th and 7th Ave and that multiple shots were fired. See Deposition of Julien Rene annexed to Wisham Decl.as **Exhibit No. 6**, at 5:21-25, 6:2-15, 7:2-12, 7:9-14, 7:20-25, 8:2-10.

124. Julien Rene, and Kraig Utley, flagged down Corey Marrow wo was driving the white van. See Deposition of Julien Rene annexed hereto as **Exhibit No. 6**, at 8:15-19, 11:12-16.

125. Julien testified that he saw a guy who was wearing a red hoddie. See Dep of Julien Rene annexed as **Exhibit No. "6",** at, 10:21-25,11:2-5.

126. Rene also testified that he and two of his friends were shot in August of 2012. See Deposition of Julien Rene annexed hereto as **Exhibit No." 6",** at 12:22-25, 13:2-9, 13:12-24.

127. Rene stated that he sustained a bullet wound August 2012, the bullet entered behind his right knee. (" It hit basically my cap and went through my leg, went in and out"). See Deposition of Julien Rene annexed to Wisham Decl. as **Exhibit No. "6",** at 14:7-21.

128. **Rene admitted that <u>he knew most of the police officers that entered his apartment</u> on March 20, 2013. Exhibit No. " 6",** at 16:19-25, 17:2-4.(emphasis added)

129. Rene admitted that the photographs shown during his deposition were photos of him pulling down his ( boxer's) pants to show the officer his wound from being shot with a bullet on the evening of March 20, 2013. **Exhibit No. 6**, 32:21-25, 33:4-25, 34:2-21.

130. Julien Rene testified that the police officers present on March 20, 2013, **did not force him to pull down his pants**. See Deposition of Julien Rene annexed to Wisham Decl. as **Exhibit No. "6",** at 34:24-25, 35:3-6.(emphasis added)

131. Rene also admitted that he had a **flesh wound and that he had been bleeding.** See Deposition of Julien Rene annexed as **Exhibit No." 6",** at 35:9-21.

132. The police officers saw blood on Julien Rene's pants **before Julien pulled down his pants**. See Deposition of Julien Rene annexed hereto as **Exhibit No. "6",** at 38:22-25, 39:2-5. (emphasis added)

133. Julien Rene was not physically injured by the police on March 20, 2013. See Deposition of Julien Rene annexed hereto as **Exhibit No." 6",** at 40:9-12.

134. Vaughn Scott alleged that officers removed her from her residence, and made her stand on the porch. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No."11"**, at 8:10-25.

16

135. Vaughn Scott further claims that the police did not allow her to leave the porch area. Ms. Scott claims that she takes morphine because of the pain she felt as she stood on the porch without a jacket in pajamas, and a T- shirt. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 8:10-25.

136. Vaughn Scott changed her testimony soon after her statement in paragraph 135, and now claims that she was taking morphine because of the pain in her body that "I have. I have arthritis and by them making me stand outside ,it made the pain worse". See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 8:21-25, 9:2.

137. Vaughn Scott testified that she was taking morphine in 2012, prior to the March 20, 2013, incident, and that the morphine was prescribe for pain she was experiencing in her back due to surgery she had unrelated to the March 20, 2013, incident. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 9:3-10.

138. Vaughn Scott stated during her testimony that the police took her outsider her apartment and made her stand on the porch for 2 hours. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 7:22-25,8:8.

139. Vaughn Scott further testified that the police asked her to be quiet and sit down. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. 11**, at 10:2-6.

140. Vaughn Scott claims that she injured her back while she was working at the post office. She does not remember how she injured her back. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 11:5-18.

141. Vaugh Scott admitted that her daughter's white van was parked in the driveway on March 20, 2013. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 14:7-11.

142. Plaintiffs lived on the 2nd floor of a three family house on 328 South 2nd Ave. on March 20, 2013. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 12:9-19.

143. Vaughn Scott testified that the police officers dragged her out of her house, and took her down the steps after the police officers busted the door. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 17:20-22.

144. Vaughn Scott stated that the police officers pulled down Julien Rene's pants. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 26:3-8.

145. Vaughn Scott subsequently changed her testimony and testified that once the police officers came inside her apartment, they took her outside and held her on the porch for two (2) and a half hours. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No." 11",** at 38:17-25. Scott then states that the police took her back upstairs and held her in her living room for another three(3) hours. Exhibit No. 11, at 39:2-6.

146. This testimony is inconsistent with Vaughn Scott's earlier testimony that she was dragged out of her apartment by the police. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 17:20-22.

147. Vaughn Scott stated that she is unable to read, cannot see, cannot cook, needs assistance in doing everything, including bathing herself, she cannot walk out the door by herself as a result of her encounter with the police on March 20, 2013. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 60:8-22.

148. Ms. Vaughn Scott then testified that the Mount Vernon Police **did not physically injure her.** See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 60:23-25, 61:2-5.

149. Vaughn Scott indicated in her testimony that she had brain surgery as a result of standing in the cold. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 67:2-11.

150. The Complaint that Vaughn Scott filed is void of any mention of her having brain surgery due to the police officers not permitting her inside her apartment and causing her to stand in the cold due to the ongoing police investigation on March 20, 2013. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11":**, at 73:2-10. 6:4-25, 77:2-25. See also Federal Complaint filed on June 19, 2014, annexed to Wisham Decl. as **Exhibit No. "A".**

151. Vaughn Scott admitted that she has no medical support linking her brain surgery, high blood pressure, strokes, seizures, or aneurisms due to the police activity on March 20, 2013. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 78:8-16.

152. Vaughn Scott admitted that she has had arthritis since 2011, and 2011. See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11"**, at 64:19-25, 65:2-7.

153. The seizures in which Vaughn Scott refers to in her testimony occurred during MS, Scott's operation when according to Vaughn Scott, the doctors decided they' were going to clip the aneurism in the 1st surgery". See Deposition of Vaughn Scott annexed to Wisham Decl. as **Exhibit No. "11",** at 61:6-25.

154. The police officers who entered plaintiff's apartment called an ambulance for medical treatment for Julien Rene who refuse to be taken to a hospital for the wounds he received in his buttock as a result of the shooting which had occurred several minutes before police arrived at 328 South 2nd Ave., on March 20, 2013. See Deposition Sgt. Steven Sexton, annexed to the Wisham Decl., as **Exhibit No." 1",** at 85:2-17.

    Dated: New York, New York
           April 6,, 2016

                              By   /s/_____
                                     Welton K. Wisham, Esq.(ww8674)
                                     43 West 43rd Street, Suite 95
                                     New York, New York 10036-7424
                                     212-709-8183
                                     Attorney for the Defendants

Mr. David Allen Thompson, Esq.
Stecklow Cohen & Thompson
217 Centre Street, 6th Floor
New York, New York 10013
(212) 566-8000
Attorney for the Plaintiffs
(By ECF)