UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VAUGHN SCOTT, NIGERIA SCOTT, PRINCE SCOTT,
ANDREE HARRIS, BRENDA SCOTT, KRAIG  UTLEY,
COREY MARROW, A.S. A MINOR CHILD,
K.M. A MINOR CHILD, AND JULIAN RENE,

                        Plaintiffs,                              14 CV 04441 (K.M.K)

    -against-

CITY OF MOUNT VERNON,A MUNICIPAL ENTITY,
MT. VERNON POLICE OFFICER ALLEN,
MT. VERNON POLICE OFFICER CAMILO ANTONINI,
MT. VERNON POLICE OFFICER TIMOTHY BRILEY,
MT VERNON POLICE OFFICER DET. BRENT GAMBLE,
MT. VERNON POLICE OFFICER SGT. STEVEN SEXTON,
CITY OF MT. VERNON POLICE DEPARTMENT, AND
POLICE OFFICERS JOHN DOES 1-10.

                        Defendants,
_____X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
_____


By     /s/_____
                   Welton K. Wisham, Esq. (WW8674)
                 43 West 43rd Street, Suite 95
                 New York, New York 10036-7424
                 Attorney for the Defendants
                 (212) 709-8183


Dated May 12, 2016

## TABLE OF CONTENTS        PG

TABLE OF AUTHORITES …………………………………………………4, 5, 6, 7

PRELIMINARY STATEMENT………………………………………………..    8

STATEMENT OF FACTS………………………………………………    13

LEGAL ARGUMENT………………………………………………    13

STANDARD FOR SUMMARY JUDGMENT……………………………….    13

**POINT I**
THE SEARCH AND SEIZURE INSIDE PLAINTIFFS' RESIDENCE WITHOUT A WARRANT WAS CONSTITUTIONALLY PERMISSIBLE DUE TO THE EXIGENT CIRCUMSTANCES WHICH EXISTED AT THE TIME OF ENTRY. ………………………………………… .    14

a) THE DOCTRINE OF "HOT PURSUIT"…………………………………..    13

b) EMERGENCY AND PREVENTION OF HARM………………………………….    13,14

c) THE PREVENTION OF THE IMMINENT DESTRUCTION OF EVIDENCE AUTHORIZED THE OFFICERS TO ENTER PLAINTIFFS' RESIDENCE WITHOUT A WARRANT…   14

d) THE SEARCH FOR WEAPONS IN THE ABSENCE OF PROBABLE CAUSE TO ARREST WAS CIRCUMSCRIBED BY THE EXIGENCIES OF THE CIRCUMSTANCES AND FOR THE PROTECTION OF THE OFFICERS…………………………………………… 14,15,16,17

**POINT II**
DEFENDANTS DID NOT ENGAGE IN EXCESSIVE USE OF FORCE AGAINST THE PLAINTIFFS     ………………………………………………………    17,18,19

**POINT III**
PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR FALSE ARREST UNDER 42.U. S. C SECTION 1983 MUST BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS WERE ARRESTED AND BECAUSE THE PLAINTIFFS TEMPORARY DETENTION WAS BASED ON PROBABLE CAUSE………………….……………………………………….    19,20

**POINT IV**
PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR FAILURE TO INTERVENE UNDER 42 U.S.C. 1983, MUST BE DISMISSED BECAUSE PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED.    …………………………………………….   20

`

**POINT V**
PLAINTIFF FOURTH CLAIM FOR RELIEF FOR FALSE IMPRISONSON AND FALSE ARREST UNDER NEW YORK STATE LAW MUST BE DISMISSED BECAUSE THE CLAIM IS TIME BARRED…………………………………………………………… 20,21

**POINT VI**
PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR ASSAULT AND BATTERY UNDER 42.U.S.C. SECTION 1983, AND UNDER NEW YORK STATE LAW MUST BE DISMISSED BECAUSE

**THE ACTION IS TIME BARRED UNDER NEW YORK STATE LAW AND BECAUSE OF THE LACK OF OFFENSIVE CONTACT. ....................................................................... 21,**

**POINT VII**
**THE PLAINTIFF'S  SIXTH AND SEVENTH CLAIMS FOR RELIEF FOR NEGLIGENCE UNDER 42 U.S.C. SECTION 1983, MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE OF THE MUNICIPALITY'S FAILURE TO TRAIN , SUPERVISE ,OR RETAIN DEFENDANTS. ................................................................................... ................... 22,23**

**POINT VIII**
**PLAINTIFFS' EIGHTH CLAIM FOR RELIEF FOR RESPONDEAT SUPERIOR UNDER NEW YORK STATE LAW FAILS BECAUSE THERE WAS NO TORTIOUS ACT COMMITTED BY THE DEFENDANT OFFICERS. ............................................................................... 23**

**POINT IX**
**MONELL:PLAINTIFF'S NINTH CLAIM FOR RELIEF CITING MONELL UNDER 42.US.C. SECTION 1983, MUST BE DISMISSED FOR LACK OF EVIDENCE. ......................................... 23,24**

**POINT X**
**THE CITY OF MOUNT VERNON POLICE DEPARTMENT IS A NON SUABLE ENTITY AND THERFORE PLAINTIFFS CLAIMS AGAINST THE <u>MOUNT VERNON POLICE DEPARTMENT MUST BE DISMISSED</u>.............................................................…… 24**

**POINT XI**
**SINCE THE POLICE OFFICERS ACTED OBJECTIVELY REASONABLE IN ENTERING PLAINTIFF'S RESIDENCE,THE DEFEDNATS ARE ENTITLED TO QUALIFIED IMMUNITY............................................................................................... ………………...     24, 25**

**CONCLUSION ………………………………………………………………………     25**

**<u>TABLE OF AUTHORITIES</u>**                                                                                                            Pg.

Anderson v. Branen,17 F. 3d 552, 557 (2nd Cir. 1994) …………………………. 20
Anderson v. Creighton,   483 U.S. 635, 107 S. Ct. 3034 (1987)………………………………  24
Antonious v. Muhammad, 250 A.D. 559,(2nd Dept. 1998)……………………………………  22
Brigham City v. Stuart,547 U.S. 398, 403 (2006)………………………………………………  8, 14
Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, (1989)…………………………………………  22, 23
Carrol v. United States267 U.S. 132 (    )………………………………………………………  17
Chambers v. Maroney,399 U.S. 42 (1970) ………………………………………………………  9
Clay v. Conlee,815 F. 2d 1164, 1170 (8th Cir. 1987) …………………………………………  23
Colon v. Coughlin,58 F. 3d 856, 873 (2nd Cir. 1995)……………………………………………  23
Croh v. Ramirez ,540 U.S. 555, 559 (2004)………………………………………………………  8
Elkins v. United States,364 U.S. 206 (1960)………………………………………………………  8
Florida v. Royer,460 U.S. 491(1983)……………………………………………………………  17
Georgia v. Randolph, 547 U.S. 103 (2006)………………………………………………………  9
Graham v. Connor,   490 U.S. 386, 396 (1980)…………………………………… ………………  19
Harlow v. Fitzgerald,   457 U.S. 800,818 102 S. Ct. 2727 (1982)…………………………………  24, 25
Iqbal v. Hasty, 490 F. 3d 143, 152 (2nd Cir. 2007) ……………………………………………  23
Jeffreys v. City of New York,  426 F.3d 549, 554 (2nd Cir. 2005)………………………………………19
Malley v. Briggs, 475 U.S. 335, 341 106 S. Ct. 1092 (1986)……………… ……………………  24, 25
Matsushita Elec. Indus Co. v. Zenith Radio Corp.,  475 U.S. 574, 587 (1986)………………… 8
Medina v. City of New York,  102 A.D. 3d 101, 108 (1st Dept. 2012)…………………………  22
Mincey v. Arizona,   437 U.S. 394 (1978) ………………………………………… ……………… . 8, 9
Minnesota v. Olsen, 495 U.S. 91 (1990)…………………………………………………………  14, 15
Mitchell v. Forsyth,   472 U.S. 511,526 (1985)  …… ………………………………………………  25
Monell v. New York City Dept. of Social Servs,  436 U.S. 658, 694, 98 S. Ct. 2018 (1978)……… 22, 23
Orraca v.City of New York,  897 F. Supp. 148897 F. Supp. 148, 151-152 (S.D.N.Y. 1995)…  24
Pendleton v. City of New York, 44 A.D. 3d 733, 736 (2nd Dept. 2007)………………………...  24
Pearson v. Callahan, 129 S. Ct. 808, 816 (2009)…………………………………………………  25
Posr. v. Killackey, 01 Civ. 2320 (LTS) (GWG) 2003 U.S. Dist. Lexis 12755, at 7-8
(S.D.N.Y.July5,2003)………………………………………………………………………………  8
Rivera v. City of New York,   40 A.D. 3d 334, 341 (1st Dept. 2007)…………………………  19
Roaden v. Kentucky,  413 U.S. 496 (1973) 93 S. Ct. 2796 2802………………………………  9
Saucier v. Katz, 533 U.S. 194, 205 (2001)………………………………………………………  25
Seshadri v. Kasraian,130 F. 3d 798, 802 (7th Cir. 1997)…………………………………………  19
Talavera v. Arbit 18 A.D. 3d 738,795 N.Y.S. 2d 708 (2nd Dept. 2005)……………………… . 23
Terry v. Ohio,   392 U.S. 1 (1968)……………………………………………………………  8, 15, 16, 17, 20
Trigo Hnos Inc. v. Premium Wholesale Groceries Inc.,424 F. Supp. 1125, 1129 (S.D.N.Y. 1976) ….. 19
United States v. Santana, 427 U.S. 38 (1976)……………………………………………………  9, 13
Warden v. Hayden,387 U.S. 294 (1967)……………………………………………………………  9, 13, 17
Weyant v. Okst, 101 F. 3d 845, 852 (2nd Cir. 1996) ……………………………………………  24
Wilner v. Village of Roslyn,952 N.Y.S. 2d 71 (2nd Dept. 2012)……………………………………  23

**STATUTES**

U.S. Const. IV………………………………………………………………… 8, 13, 14, 15, 17, 19, 20, 24
42 U.S.C. Section 1983 ……………………………………………………… 7, 20, 21, 22, 23
N.Y. Gen. Mun. Law Section 50 (e )………………………………………………….
C.P.L.R. (215)(3)……………………………………………………………………………………….

UNITED STATES DISTRICT COURT                    (14 CV 04441(K.M.K.)

| | |
|---|---|
| VAUGHN SCOTT, NIGERIA SCOTT, PRINCE SCOTT, ANDREE HARRIS, BRENDA SCOTT, KRAIG  UTLEY, COREY MARROW, A.S. A MINOR CHILD, K.M. A MINOR CHILD, AND JULIAN RENE, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (AMENDED)** |

Plaintiffs,

-against-                                              ORAL ARGUMENT
                                                                **REQUESTED**

CITY OF MOUNT VERNON, ET.AL.
                                            Defendants,

Defendants City of Mount Vernon, Mount Vernon Police Department, Officer Allen, Officer Camilo Antonini, Detective Brent Gamble, Officer Sgt. Steven Sexton, and Officer Timothy Briley, by their attorney Welton K. Wisham, as outside counsel for the Corporation Counsel of the City of Mount Vernon, submit the within memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

On the evening of March 20, 2013 at approximately 6:17 pm, a frantic caller called the Mount Vernon Police Department informing them that several shots had been fired in the vicinity of 215 South Ninth Ave, City of Mt Vernon.   The caller stated that a white minivan with a shattered rear windshield containing three male blacks had been spotted in the area traveling down South Ninth Street.    A second call was made soon thereafter reporting shots fired and that a light skin male with a red hoodie was seen running towards ebony gardens, opposite 70 West 3rd street.    The Police immediately dispatched several police units to the scene. Officers Michael Gregorio and Johanna Santos responded to South 9$^{th,}$ Ave. Three 9mm shell casings were recovered at the crime scene by detective Notarfrancesco.  Gregorio and Santos proceeded to canvass the area for a white van with a shattered rear windshield.  While canvassing the vicinity, Gregorio observed a white van with a shattered rear windshield parked in the driveway of 328 South 2nd Ave. (hereinafter , the premise)  The Mt. Vernon police department sent out a radio transmission alerting officers that the white minivan which had fled the scene of a shooting, had been located at the premise.  Gregorio arrived at 328 South 2nd Ave where he felt the hood of the van and noted that the engine was still warm.    Detective Ibanez arrived at 328 South 2nd Ave, along with an eyewitness

who saw the van driving away from the shooting.  The eyewitness  immediately identified the van parked in the driveway of the premise as the van he observed leaving the area of 215 South 9th Ave.   Sgt. Steven Sexton arrived at the premise along with Gregorio. They proceeded to the 2nd floor.  They were met by Brenda Scott, and Vaughn Scott. The officers informed Brenda Scott that the officers were conducting an investigation of a shooting which involved her daughter's white minivan.  The officers requested permission to enter the residence in furtherance of their investigation.  Brenda Scott gave her consent for the officers to enter.

Upon entering the residence Officer Gregorio observed approximately six black males inside the apartment.  Officer Gregorio instantly recognized  Prince Scott, and Corey Marrow, both of whom began shouting obscenities at the officers.  Officer Gregorio observed both males to be "**sweating profusely, and breathing rapidly**".   Sexton immediately recognized Corey Marrow, Kraig Utley, Prince Scott, and Demetrius Royal, inside the apartment as individuals whom Sexton had prior interactions with and who knew the individuals as being members of a local gang crew called" **The Gunners" who**  were responsible for a lot of violence within the City of Mt Vernon.   Once inside, the officer conducted a limited search for weapons, and possible victims.     One of the occupants, Julien Renee, admitted that he had in fact been shot in the buttocks, and voluntarily pulled down his pants to show the officers his wounds.  Sexton saw several occupants hiding in a back room. He ordered them out of the back room and into the living room for the officer's safety.  No physical altercation occurred. No arrests were made.  The Defendants' motion for summary judgment should be granted for several reasons.    First, exigent circumstances existed which caused the officers to enter the residence without a warrant.   Second, the Defendants had probable cause to detain the occupants of the residence. The officers reasonably believed that a crime had been committed, and that the occupant's lives may have been in danger.   Third, the Defendants were faced with  **"now, or never"  circumstances** which prevented them from obtaining a search warrant prior to their entry inside the residence based on the exigent circumstances.   Fourth, Plaintiffs' claims of false arrest, and false imprisonment are time barred under New York Law.

Fifth, Plaintiffs' have failed to proffer any evidence that the defendants engaged in excessive force. Six, Plaintiff's claims for assault and battery under New York Law, must be dismissed because the claims are time barred. The instant action commenced on March 20, 2013. Plaintiff's Summons and Complaint was filed on June 19, 2014. According to C.P.L.R. Section 215 (3) assault and battery under is an intentional tort which has a one year statute of limitations. This claim is time barred. Seventh, Plaintiffs claims alleging negligence under New York State Law should be dismissed because the officers' actions were reasonably related to the existence of exigent circumstances which cause defendants to enter plaintiffs' residence. Eighth , Plaintiffs claims alleging "Respondent Superior under New York State Law must also be dismissed based on a lack of a tortious act. Ninth, Plaintiff's claims against Defendants for " Negligence " under U.S.C. Section 1983 must also be dismissed because the claim is not cognizable under 42 U.S. Section 1983. Tenth, Defendants are entitled to Qualified Immunity which shields the Defendants from any liability stemming from the March 20, 2013, incident because their actions were objectively reasonable under the circumstances.

## STATEMENT OF FACTS

The Court is respectfully directed to Defendants' Statement Of Facts under Fed. R. Civ. Pro. Local Rule 56.1

## LEGAL ARGUMENT

## STANDARD FOR DISMISSAL UNDER SUMMARY JUDGMENT

Summary judgment is warranted when viewing the evidence in a light most favorable to the non-moving party, the Court determines that there exists no genuine issues of material fact in dispute. Under Fed. R. Civ. P. 56, summary judgment is warranted if the pleading, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. See **Matsushita Elec. Indus Co. v. Zenith Radio Corp,** 475 U.S. 574, 587(1986)(citation omitted). If the non-moving party's evidence "is merely colorable, or is not significantly probative," or if it

consists only of "conjecture, or surmise," summary judgment may be entered against that party.  **Posr v. Killackey,** 01 Civ. 2320(LTS)(GWG),2003 U.S. Dist. Lexis 12755, at 7-8 (S.D.N.Y. July 25, 2003).  For the reasons set forth herein Defendants are  respectfully requesting this Court to grant the Defendants request for summary judgment and dismiss the Plaintiff's complaint in its entirety .

<u>**POINT  I**</u>

**THE SEARCH AND SEIZURE INSIDE PLAINTIFFS' RESIDENCE WITHOUT A WARRANT WAS CONSTITUTIONALLY PERMISSIBLE DUE TO THE EXIGENT CIRCUMSTANCES WHICH EXISTED AT THE TIME OF ENTRY.**

The Fourth Amendment to the Unites States Constitution generally requires the police to have a warrant to enter a suspect's home to search, or to seize evidence of a crime.  The Fourth Amendment states in relevant part that " the right of the people to be secure in their person, houses, papers and effects, against **unreasonable search and seizures**, shall not be violated…" Const. Amend. IV. (emphasis added).

The right however, is not absolute and is subject to several exceptions. "For what the Constitution forbids is not all searches, and seizures, but **unreasonable searches. and seizures".  Terry v. Ohio ,** 392 U.S. 1, (1968 )(quoting **Elkins v. United States,** 364 U.S. 206 (1960) (emphasis added).   Although searches, and seizures inside a home without a warrant are presumptively unreasonable, this presumption may be overcome if the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth  Amendment.  **Mincey v. Arizona ,** 437 U.S. 394 (1978). See also **Brigham City v. Stuart**, 547 U.S. 398, 403(2006)(quoting **Croh v. Ramirez,** 540 U.S. 551, 559 (2004).   The Supreme Court has carved out several notable exceptions to the requirement of law enforcement's entry into a home without a warrant based on the exigency of the situation or "Exigent Circumstances", **Id**.  Hot pursuit,  Emergency, Threat to Public Safety, Prevention of Imminent Harm, Prevention of Imminent Destruction of Evidence, Prevention of Escape, and the Protection of residents from Imminent Physical Danger, have all been recognized, and classified, as exigent circumstances which were found to be reasonable circumstances for which law enforcement need not have a search warrant to enter a person's residence.   Thus, these exceptions have been upheld as

constitutionally permissible.  **Warden v. Hayden, 387** U.S. 294,(1967),  **United States v. Santana,** 427,

U.S. 38(1976),  **Mincey v. Arizona,** 437,U.S. 385, (1978), **Georgia v. Randolph**, 547, U.S. 103 (2006).

    Exigent circumstances generally exist when law enforcement officials will be unable, or unlikely, to

effectuate an arrest, search, or seizure for which probable cause exists, unless they act swiftly, and

without seeking prior **judicial** authorization.  **Chambers v. Maroney,** 399, U.S. 42, (1970), 90 S. Ct

1975.(emphasis added).

    Where there are exigent circumstances in which police action must literally be" **now or never"** to

preserve evidence of the crime, it is reasonable to permit action, without prior evaluation ". **Roaden v.**

**Kentucky** , 413, U.S. 496,(1973). 505, 93 S. Ct. 2796, 2802.  The Defendants confronted such now or

never circumstances on the evening of March 20, 2013.

    On the evening of March 20, 2013, the Mt. Vernon police department  received a telephone call from

a caller who indicated that she had heard two shots fired and had seen a white van with three males, one

wearing a red cap, and two others dressed in black, going down South 9th Ave in a white van.  See City

of Mount Vernon's Live Aeigs Public Safety System Incident Report March 23, 2013. (Annexed to the

Wisham Decl. as **Exhibit " B".)**    At approximately 18:26, (6:26 pm) the Mount Vernon Police

Department received a second call from a male caller who informed the police that he had seen a light

skin male, with a red hoodie run towards Ebony Gardens opposite 70 West 3rd street.  See City of Mount

Vernon's Live Aeigs Public Safety System Incident Report **Id.**    Moments after the radio transmission,

Sgt. Sexton, and several other police units were notified that a vehicle matching the description via the

radio transmission had been located by the police parked in the driveway of 328 South 2nd Ave.   Sexton

was sent to the scene of 328 South 2nd Ave., for the purpose of conducting a criminal investigation of a

serious crime, namely an assault with a handgun based on the report that gunshots had reportedly been

fired and that a minivan had driven off with three male blacks.  See Sexton Deposition (annexed to

Wisham Decl. as **Exhibit No. "1"**, at 11:12-15, 21-25, 12:1-3, 13:2-4.

Sexton was notified by police officer Gregorio that the vehicle located at 328 South 2nd Ave., might have been the vehicle involved in the shooting.   See **Exhibit No. "1",** Sexton's Dep. annexed to Wisham Decl.   Sexton was aware that three(3) male blacks had been seen running from the original scene of the shooting which was only minutes away from the Plaintiffs' residence.   Sexton's Dep. Annexed to Wisham Decl.as **Exhibit No. "1",** at 12:13-15.

Sexton was also aware via a radio transmission that shell casings had been found and recovered near 9th Ave. and Third Street.   See **Exhibit No. "1'.** at 13:18-22.   Sexton was also aware prior to his arrival at 328 South 2nd Ave that the van pursued in the shooting, had its rear windshield shattered.   Sexton spotted the van parked in the driveway of 328 South 2nd Ave.   The vehicles' engine was still warm.   See Sexton Dep. Annexed to Wisham Decl. as **Exhibit No."1'**, at 15:17-25, 16:1-2, 17:6-14.,19: 5-7.   Within minutes of the radio transmission, officer Camilo Antonini arrived at the premises in response to the radio transmission he received that shots had been fired and that the police were seeking suspects in a white van .   **Exhibit No."3',**  Dep. of Camilo Antonini, annexed to Wisham Decl., at 19:19-21, 26:20-25, 27:1-7. Police officer Allison Allen was also dispatched to 328 South 2nd Ave to take part in the police investigation..  See Dep. of Allison Allen attached to Wisham Decl. as **Exhibit No."2",** at 10:6-13, 11: 10-22.   In addition, officer Timothy Briley responded to the radio transmission calling for the dispatch of additional units to the scene at 328 South 2nd Ave.   Briley was aware that gunshots had been fired in the vicinity of Fifth Ave., and Third Street, and that an injured individual had been shot and placed inside a vehicle matching the vehicle found at 328 South 2nd Av.   See Briley Dep., annexed to Wisham Decl. as **Exhibit No.'5"**, at 9: 10-16, 9:18-24, 10: 23-25, 11: 1-2,11:11-25.   Officer John Gamble was not present at the plaintiff's residence.  See Dep. of John Gamble, annexed to Wisham Decl., as **Exhibit No. "4",** at 10: 20-25, 11:2-20, 12: 5-25, 13:2-24, 15:10-13, 18:23, 16: 2-10.

The officers were dispatched to the premises to conduct an investigation of a prior shooting and that a car had sped off from the scene of the shooting which was later found parked in the driveway of 328 South 2nd Ave.  See Dep. of Officer Allison Allen attached to Wisham Decl. as **Exhibit No."2',** at 20:12-24. See also Decl. of officer Timothy Briley, **Exhibit No. "5"**, at 9:10-16.l .    Sexton knocked on the

door and was met by an adult female believe to be Brenda Scott.  Sexton informed her that the police were there to investigate a shooting which had occurred and that the van found in her driveway fit the description of the van that was involved in the shooting.  Sexton testified that the woman who opened the door did in fact tell him that the person who owned the white vehicle parked in the driveway lived there at 328 South 2nd Ave, and was her daughter. **Exhibit No. "1",** at 17: 17-19, 21:7-25.   The white minivan was located approximately ten to fifteen minutes  after the initial shots were fired.  See Sexton Dep, **Exhibit No.'1"**, at 15: 17-20.   Officers Chery, Gregorio, and Detective Hutchins filed police reports describing the police investigation and the events which lead the officers to enter 328 South 2nd Ave.  Chery stated that he was dispatched to 215 9th Ave., based on information that **" multiple reports of shots being fired in the area.**"  See **Exhibit "H".**    Detective Notarfrancesco responded to the scene and recovered three shell casings on the roadway opposite 70 W. 3rd Street.  At approximately 18:30 hours, P.O. Gregorio observed a vehicle fitting the  description of the white minivan in front of 328 South 2nd Ave, where a **shot victim was found, Julien Rene.**  See **Exhibit " H" ,**  Gregorio's report states that he and officer Santos responded to the area of South 9th Ave, and 3rd street on reports of shots fired.

   Gregorio received a radio transmission that multiple suspects were seen getting into a white van with a shattered rear windshield at South 9th Ave, and 3rd street.   The van was seen traveling southbound on South 9th Ave,  from 3rd street.   Gregorio then proceeded to canvass the area for a white van with a shattered rear windshield.. Gregorio found the white van parked in the driveway of 328 South 2nd Ave.  According to Gregorio,  the vehicle's engine was still warm.  See **Exhibit ""I".**  The van was registered to Nigerian Scott. **Id.**  Sargent Sexton arrived at the premises within minutes of the shooting.   Gregorio, and, Sexton then proceeded to go to the 2nd floor whereby they knocked on the door and was met by Brenda Scott who informed the officers that the van was registered to her daughter Nigeria Scott.   See **Exhibit "I",** Gregorio's Report.

   Gregorio observed six males inside the apartment.  He was approached by two males who were known to Officer Gregorio as Prince Scott, and Corey Marrow.  Gregorio saw both Prince Scott, and Corey Marrow **" sweating profusely and breathing rapidly."**'. **Exhibit "I".**   Gregorio asked Brenda Scott if

the officers could enter the apartment. Brenda Scott replied **" Okay".** See **Exhibit " I".** Once inside the residence, Julien Rene informed the officers that he had been shot, and proceeded to pull his pants down to show the officers a bullet wound on his right buttocks. **Exhibit "I"**. See also **Exhibit "E"**, (photographs of Julien Rene bullet wound.) Rene told officer Gregorio that he had been walking in front of 70 East 3rd street towards 7th Ave, when he heard five gunshots. Rene then ran towards South 9th Ave and saw his friend Cj (Corey Marrow) driving a white van. Rene jumped in the van and drove with Corey Marrow to 328South 2nd Ave. **See Exhibit "I",**

Detective Hutchins' report stated that there was a victim of gun shots fired on March 20, 2013. The crime was noted as an Assault in the First Degree. See **Exhibit "G",** annexed to Wisham Decl. Detective Hutchins stated in his report that Julien was shot while walking eastbound on W. 3rd. St. in front of 70 w. 3rd. Street. Renee sustained a small gunshot, graze wound to the right buttocks. Rene was treated at the scene and release. **Exhibit "G".** Three 9 mm shell casings were recovered Det. Notarfrancesco. **See Hutchins Report Exhibit "G".**

An eyewitness to the shooting was brought to 328 South 2nd Ave. and identified the van parked in the driveway **as the van he observed leaving the scene of 215 South 9th Ave at the time of the shooting. Exhibit "G".** Nigeria Scott signed a voluntary waiver to search her minivan. **Exhibit "C",**

Officer Gason also filed a report regarding his investigation of an Assault in the 2nd Degree. See **Exhibit "J"**, annexed to Wisham Decl. Gason's report stated that he was dispatched to South 9th Avenue and West 3rd Street on a report that shots had been fired in this area. Based on the exigency of the circumstances , the officers entered plaintiff's residence without a warrant in furtherance of their criminal investigation. The entry was reasonable, and lawful. The officers were faced with a situation which required them to act quickly, without delay.

The Fourth Amendment does not require police officers to delay in the course of their investigation if to do so would gravely endanger their lives, or the lives of others. **Warden v. Hayden,** 387 U.S. 294, (1967). The Defendant police officers did not delay their investigation. Speed was essential, and only by a thorough search of the premises for persons, and weapons could have reasonably ensured that the officers

had gained control of any weapons which could have been used against the officers as well as against the occupants, and or to affect an escape.  This rule was upheld in **Warden. Id**.

Without a warrant to search or arrest but with substantial reason to believe that suspects of a recent shooting were inside the premises , the defendant officers entered the apartment and began to undertake a limited protective search for a weapon that the officers believed was involved in the prior shooting.  The search was made based on the officer's reasonable belief that suspects were inside the premises, and that victims may have also been inside the apartment that required emergency treatment.  The defendants had a reasonable belief that there was an imminent threat to the occupants which required immediate action.

a) **The doctrine of " Hot Pursuit"**

The recognition of a warrantless entry into a person's home based on the doctrine of "Hot Pursuit " has been  constitutionally upheld when police with probable cause to believe that an armed robber had entered a house a few minutes before to make a warrantless entry to arrest the robber and to search for weapons. **Warden v. Hayden** , 387, U.S. 294.  Hot pursuit means some sort of a chase , but it need not be an extended  "hue and cry in an about the public streets".   **United States v. Santana,** 427 U.S. 38 (1976). In the case at bar, the police officer had probable cause to believe that persons armed with a deadly weapon had left the scene of a shooting in a moving vehicle and that the suspects were in a white minivan which fled the scene of the shooting  and retreated to 328 South 2nd Ave inside a 2nd floor apartment.  The officers were in hot pursuit of the suspects, and entered the plaintiff's home without a warrant based on the fact that they found the vehicle fitting the description of being involved in a serious crime parked in the driveway with its engine still warm.  These facts are indicative of a "hot pursuit for which the officer had a legal right to enter the residence in search of weapons and possible victims.

b) **Emergency and Prevention of Harm"**

On March 20, 2013, the Defendant police officers were faced with an emergency situation which required the officers to make a judgment, warranting the entry into the plaintiff's residence without a warrant.   Notwithstanding the assertion that officers Sexton, and Gregorio had consent to enter the residence, the entry was warranted based on the emergency exception to the Fourth Amendment.   The

"Emergency" exception to the warrant requirement allows police officers to enter, and search a residence in circumstances which prevent the offices from obtaining a search warrant or consent. The gravity of the crime, and the likelihood that the suspect is armed and dangerous must be factors in assessing the urgency of the situation. **Minnesota v. Olsen**, 495 U.S. 91, 110 S. Ct. 1684 (1990).

Based on the undisputed facts set forth herein and in Defendants Statement pursuant to F.R. Civ. P. 56, it is clear that an emergency situation existed and that the officers responded accordingly. There was an actual shooting involving three black males. The male blacks were seen running into a white van with a shattered rear window shatter. The van sped away from the scene and was found parked in the plaintiff's driveway. The victim of the shooting, Julien Rene, was inside the residence with blood on his pants. Julien Rene admitted that he had gotten shot near 9th and 3rd street. Corey Marrow and Kraig Utley were with Julien Rene when they drove away from the scene of the shooting and drove to 328 South 2nd Ave. With full knowledge of these facts, the Defendant officers possessed probable cause to believe that there was a clear and present danger to the occupants of the apartment which constituted an emergency requiring the officers to intervene and act quickly to prevent harm to the occupants.

**c) The prevention of imminent destruction of evidence authorized the officers to enter plaintiff's residence without a warrant.**

The exception to the warrant requirement under the Forth Amended based on law enforcement's needs to prevent the imminent destruction of evidence has long been upheld by the Courts as sufficient justification for a warrantless entry, and search. **Brigham City v. Stuart**, 547 U.S. 398, (2006). See also **Minnesota v. Olson,** 495 U.S. 91, 100 (1990). The warrantless entry and search in the instant case was reasonable and within the exceptions to warrant requirement of the Fourth Amendment. The exigency of the situation was such that there was no time for delay.

**d) THE SEARCH FOR WEAPONS IN THE ABSENCE OF PROBABLE CAUSE TO ARREST WAS CIRCUMSCRIBED BY THE EXIGENCIES OF THE CIRCUMSTANCES AND FOR THE PROTECTION OF THE OFFICERS.**

It has been well recognized that where a responsibly prudent officer is warranted in the circumstance of a case to believe that his safety or that of others is endanger, he may make a reasonable search for

weapons of the person, or persons believed by him to be armed and dangerous, regardless of whether or not he has probable cause to arrest that individual for a crime or the absolute certainty that the individual is armed. **Terry v. Ohio**, 392 U.S. 7 (1968)

Upon entering the occupant's residence, officer Sexton, Gregorio and Officer Antonini, immediately recognized several of the occupants as persons whom the officers had arrested in the past for serious criminal activity. Antonini recognized Prince Scott, Corey Marrow, Julien Rene, Kraig Utley, and Demetrius Royal King upon entering the plaintiff's residence because Antonini had arrested the individuals in the past for possession of drugs, gang affiliation and for involvement in shootings which had occurred in the city of Mount Vernon. See Deposition of Camilo Antonini annexed as **Exhibit No. 3 at 23:3-12.**

Officer Sexton testified that upon entering the residence, he recognized Corey Marrow because Sexton had numerous interactions with him and that the whole crew is actually one of the local gangs who are responsible for a lot of the violence in the community. See Sexton Deposition annexed as **Exhibit No. 1 at 29:4-9**

Prince Scott admitted under oath that he knew both officers Antonini, and Sexton when they entered his apartment because the officers had arrested Prince Scott on several occasions prior to the March 20, 2013, incident. See Deposition of Prince Scott annexed as **Exhibit No. 10,** at 8:7-24, 9:2, 12:8-25. Prince Scott had several run ins with both officers Sexton and Antonini. **See Exhibit No 10,** 42: 17-22. Prince Scott has an enormous criminal history with the Mt Vernon Police Department. See **Exhibit "L".**

This reports lists several arrests made by the Mt Vernon Police Department of Plaintiff Prince Scott. Scott was arrested by Officer Antonini on July 27, 2008, and charged with Criminal Contempt per P.L. Section 215.50. **Id**, at pg. "5". Antonini also arrested Prince Scott on July 11, 2011, and charged with Scott resisting arrest per P.L. Section 205.30. Antonini again arrested Prince Scott on May 12, 2012, and charged Scott with unlawful possession of Marijuana. **Id.** at 3. Officer Sexton arrested Prince Scott on November 21, 2005, and charged Scott with assault in the 3rd degree in accordance with P.L. Section 120.

<u>Id.</u>  Prince Scott was also arrested by police officer Chery on April 4, 2012, and charged him with criminal contempt, P.L. 215.50. **Id.**

All of the occupants were made to gather in the living room.    The intrusion was necessary to prevent the possible escape of suspects as well as the prevention of the destruction of a weapon, and for the protection of the officers, as well as for the protection of the occupants.  The detention was temporarily. Sexton had sought a search warrant to extend the search for a weapon.  The district attorneys however, decline the issuance of a warrant.  See Deposition of Steven Sexton annexed as **Exhibit No.'1"**, at 36:21-25, Dep. 52: 2-12.

Corey Marrow, and Kraig Utley have also been arrested on numerous occasions by officers Gregorio, Sexton, and Antonini.   See **Exhibit "M".**   Kraig Utley's adult profile sheet denotes similar arrests by Antonini, and officer Addison.  On March 4, 2012, officers Antonini arrested Utley and charged him with criminal possession of a control substance, P.L. Section 221.15  See **Exhibit " O".**

In determining the reasonableness of  a seizure the Court should first focus on the government's interest which justified the intrusion upon the constitutionally protected interests of the occupants.   " There is no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion for which the search or seizure entails".  **Terry v, Ohio,** 392 U. S. 1 (1968), **Camera v. Municipal Court**, 387 U.S. 523 ( ).  The predicate permitting seizures on suspicion short of probable cause is the law enforcement's interest warranting a limited intrusion on the personal security of the person.  **Florida v. Royer,** 460, U. S. 491 (1983).

In determining  whether the officers' actions were justified at its inception, and whether the officers' actions were reasonably related in scope to the circumstances which justified the interference of the individual's  liberty, a balancing of the interest is required.   When the nature and extent of the detention are minimally intrusive of the individuals fourth amendment interests,  the opposing law enforcement interests can support a seizure based on less than probable cause." **Terry v. Ohio**, 392 U.S. 1 (1968).

In making the assessment of reasonableness, it is important that the facts be judged against an **objective standard:** ,would the facts available to the officer at the moment of the seizure or the search, warrant a

man of reasonable caution in the belief that the action taken was appropriate. **Carrol v. United States,** 267 U.S. 132. (emphasis added).    The officers were under a continuing duty to investigate the shooting which had taken place only minutes before the officers entered the plaintiff's residence.    The officers had a duty to protect themselves once they entered the residence especially in light of the fact that the officers knew the criminal history of Corey Marrow, Kraig Utley, Prince Scott and other occupants.    "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the office or to others, it would appear to be clearly unreasonable to deny the office the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm". **Terry v. Ohio,** 392 U.S. 1 (1968)_._    A search for weapons in the absence of probable cause to arrest must be strictly circumscribed by the exigencies which justify its initiation. **Warden v. Hayden**, 387 U.S. 294 (1967).

Therefore,  in balancing the interest of the Mount Vernon police officers in their criminal investigation of shots fired, and for the protection of life and the imminent threat of harm to the occupants, it is clear that the  Defendants had authority to conduct a reasonable search for weapons for the protection of the police officers.    The officers did not have to be absolutely certain that the individuals were armed.  The issue is whether a reasonably prudent police officer in possession of the information which was known to the defendants would have reason to believe that the safety of the officers and occupants were in such danger to have justified the search, and detention of the occupants. The defendants are entitled to summary judgment because a reasonable prudent officer would have believed that the occupant's lives were in danger and that a limited search of the occupant's residence was absolutely reasonable and necessary. Therefore Plaintiff's first claim must be dismissed.

## POINT II

**C)    DEFENDANTS DID NOT ENGAGE IN EXCESSIVE USE OF FORCE AGAINST THE PLAINTIFFS.**

The underlying record is void of evidence that the defendants engaged in excessive force. Each of the plaintiffs has clearly stated that they were not physically injured by the defendants.

A. <u>Vaughn Scott</u>

Vaughn Scott was not physically injured by the police on March 20, 2103. See **Exhibit No. "11",** at 42: 23-25, 43: 2-7, 60:23-25, 61:2-5.   Vaughn also gave testimony the police caused her to have "14 aneurisms, seven brain surgeries, constantly see a  psychiatrist , cannot sleep , have seizures , a stroke, and cant' help myself more less help my children right now.  I can't even  watch my grandchild for my daughter to go to work, so yes they have kept me from being able to live a normal independent life.' **Exhibit " "11",** 61:6-25. Vaughn Scott claims the Mount Vernon Police officers caused her to have seizures.  Id., **Exhibit No. "11",**at 62:2-22.  These assertion are utterly absurd and without merit.  Vaughn Scott's testimony regarding her injuries is remarkable and implausible.  No rational juror could find that the defendant committed any physical acts against Ms. Scott to have caused 14,aneurisms, seven brain surgeries or a stroke.   Plaintiff Vaughn Scott failed to submit any evidence to establish a causal connection between her temporary detention ,and her medical condition.   As a matter of law summary judgment should be granted.

B. <u>Nigeria Scott:</u>    Ms. Scott testified that she was not hurt. **Exhibit No."9",** at 20: 13-25,21: 2-17.

C. <u>Andree Harris:</u>  Andree Harris was not physically injured.  See **Exhibit No. "12",**at 20: 20-25, 21: 2-5.

D.  <u>Brenda Scott</u>   Brenda Scott was not physically injured by the police during on March 2013, nor did she observe any other occupant physically injured by the police. See **Exhibit No. "13",** at 21:12-14, 28: 15-18.

E. <u>Kraig Utley</u> was not physically harmed on March 20, 2013.  See **Exhibit No. "15"**, at 48:9-25, 49:2

F. <u>Corey Marrow:</u>   Corey Marrow was not handcuffed or physically harmed by the Defendants.  See **Exhibit No. "14"** at, 31: 10-15, See also **Exhibit "F"** ,at 36:5-11

G. <u>Kevin Marrow:</u>  Kevin Marrow  was not injured by the Defendants on March 20, 2013.  See **Exhibit No. "7",** at 22:2-7

H. <u>Julien Rene:</u>   Julien Rene was not physically injured by the police on March 20, 2013. See **Exhibit No. "6"**, at 40: 9-12

I. <u>Prince Scott:</u>  Prince Scott stated that he was not physically injured. **Exhibit No "10'**, at 32:5-

J. Arabia Scott:  Arabia Scott was not physically injured. See Dep. Arabia Scott. **Exhibit No. 8,** at 18:4-21.

It is well established that not every push or shove violates the Fourth Amendment. **Graham v. Connor**, 490 U.S. 386, 396 (1989).   Whether the force used is excessive must be analyzed under the Fourth Amendment and its standard of objective reasonableness.  **Rivera v. City of New, York** 40 A.D. 3d 334, 341 (1st Dept. 2007).  "The reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight". **Id.** at 341.    The non-moving party is obligated to " offer some hard evidence that his version of the events in not wholly fanciful' . **Jeffreys v. City of N.Y.**, 426 F. 3d 549 , 554(2nd Cir. 2005).  Testimony should be rejected without a trial if in the circumstance no reasonable person would believe it. **Seshadri v. Kasraian,** 130 F.3d 798, 802 (7th Cir. 1997)

Summary judgment is warranted where a plaintiff's evidence is " too incredible to be believed by reasonable minds" such that no reasonable juror could not possibly accept his account of the facts". **Trigo Hnos, Inc v. Premium Wholesale Groceries, Inc.** 424 F. Supp, 1125, 1129 (S.D.N.Y 1976). Defendants respectfully request this Court to dismiss any claims by the plaintiff grounded in the use of excessive force for the reasons set forth above.

## POINT III

**PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR FALSE ARREST UNDER 42.U. S. C SECTION 1983 MUST BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS WERE ARRESTED AND BECAUSE THE PLAINTIFFS TEMPORARY DETENTION WAS BASED ON PROBABLE CAUSE.**

Plaintiff's second claim for relief based on false arrest should be dismissed because none of the Plaintiffs were arrested on March 20, 2013 during the course of this incident.   The Supreme Court defined an arrest as being …"the  initial stages of a criminal prosecution .  It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with individual's freedom of movement, whether or not trial or conviction follows. **Terry v. Ohio**, 392 U. S. 1 (1968).  None of Plaintiff's were arrested  or taken into custody to answer for criminal activity on March

20, 2013, which would have initiated the initial stages of an arrest as delineated in **Terry**. Id. Plaintiff's confinement was based on probable cause which is defeats plaintiffs claim for false arrest. For these reasons the claim for false arrest should be dismissed.

### POINT IV

### PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR FAILURE TO INTERVENE UNDER 42 U.S.C. 1983, MUST BE DISMISSED BECAUSE PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED.

Plaintiff's third claim for relief for the failure of the individual Defendants to intervene should be dismissed because the actions by the Defendants did not violate the Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure. In order to find liability under 42 U.S.C. Section 1983 for the failure to Intervene, Plaintiff must show, and prove that the Defendants participated in an, unconstitutional violation, and that the officers failure to intervene to stop the alleged constitutional violations took place in their presence, and that the officers had a reasonable opportunity to intervene to prevent or remedy obvious constitutional violations by other officers. " It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens form infringement by other law enforcement officers in their presence". **Anderson v. Branen,** 17 F. 3d 552, 557 (2nd Cir. 1994). The exceptional circumstances present on March 20, 2016, gave defendants the right to enter plaintiff's' apartment, and to conduct a limited search for weapons and to impose a temporary restraint on the plaintiffs movements. Therefore, the plaintiff's claim for failure to intervene should be dismissed.

### POINT V

### PLAINTIFF FOURTH CLAIM FOR RELIEF FOR FALSE IMPRISONMENT AND FALSE ARREST UNDER NEW YORK STATE LAW MUST BE DISMISSED BECAUSE THE CLAIM IS TIME BARRED.

False arrest and imprisonment have a one year statute of limitations under N.Y. C.P.L.R. Section 215(3). The instant action was commenced by the filing of a summons, and complaint, dated June 19, 2014. The Plaintiffs' claim accrued on March 20, 2013. The time period to file claims grounded in false

arrest, and false imprisonment under New York State Law, expired on March 19, 2014, one year after the

alleged incident.  Therefore the Plaintiffs claims against the individually named Defendants for

false arrest, and false imprisonment are time barred under New York State Law, and therefore must be

dismissed.    Corey Marrow and Prince Scott were lawfully arrest on March 25, 2013, and both were

charged with one count of the Offense of Obstruction of Governmental Administration in the 2nd Degree

in accordance with Penal Law Section 195.05  stemming from the March 23,2016, incident. See  **Exhibit**

**"Q",** Corey Marrow, and Prince Scott, pled guilty to this offense which occurred March 23, 2013.   See

**Exhibit "R",**

**POINT VI**

**PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR ASSAULT AND BATTERY UNDER 42.U.S.C.
SECTION 1983, AND UNDER NEW YORK STATE LAW MUST BE DISMISSED, BECAUSE
THE ACTION IS TIME BARRED UNDER NEW YORK STATE LAW AND BECAUSE OF THE
LACK OF OFFENSIVE CONTACT.**

Plaintiff Julien Rene brought this cause of action against the individual Defendants for Assault and

Battery under New York State Law, and under 42 U.S.C. Section 1983.  Rene claims that unnamed

defendants officers unlawfully force him to remove his clothing, and, or forcibly removed his clothing in

the presence of his family, including a female adult, and one female child.  See Compl. **Exhibit "A",**

paragraphs 81-84.    This claim for battery must be dismissed upon summary judgment because

the Plaintiff himself testified during his deposition that the officers did not use any physical force

when he, Julien Rene, pulled down his pants to show the officers that he had been shot in the

buttocks ,on March 20, 2013.  See Deposition of Julien Rene annexed in the Wisham Decl. as

**Exhibit No."6 ,at 35: 3-6.**    Moreover, the statute of limitations for battery which is an

intentional tort under New  York's C.P.L.R.215.(3), is one year from the date of the accrual.

Plaintiff's action was filed on June 19, 2014, well beyond the time period for sustaining a claim

under New York for battery.

## POINT VII

**THE PLAINTIFF'S SIXTH AND SEVENTH CLAIM FOR NEGLIGENCE UNDER 42 U.S.C. SECTION 1983 MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE OF THE MUNICIPALITY'S FAILURE TO TRAIN , SUPERVISE OR RETAIN DEFENDANTS.**

First, it is well settled that a municipality cannot be held vicariously liable on a section 1983 claim for an alleged injury inflicted by its employees or agents. **Monell v. New York City Dept. of Social Servs**. 436 U.S. 658, 694,(1978), 98 S. Ct. 2018. Moreover, a municipality cannot be held liable based solely on the doctrine of respondent superior. **Canton v. Harris**, 489 U.S. 378 (1989). The plaintiffs have failed to produce any evidence supporting their contention that the action is alleged to have been committed was in fact committed under a municipal policy statement, or ordinance. Thus, this claim against officers Sexton, and Gamble must dismissed as a matter of law. Second, the State of New York, in cases alleging police misconduct, does not recognized a cause of action for general negligence. **Medina v. City of New York,** 102 A.D. 3d 101, 108 (1st Dept. 2012). A plaintiff seeking damages for an injury resulting from a wrongful arrest and detention, may not recover under broad general principles of negligence but must proceed by way of the traditional remedies of false arrest, and imprisonment. **Antonious v. Muhammad,** 250 A.D. 559,(2nd Dept. 1998). Thus plaintiff seventh claim for relief must be dismissed. b) supervisory liability: A supervisor may not be held liable under section 1983 because his subordinate committed a constitutional tort. To hold a supervisor liable, the plaintiff must show that the supervisor 1) directly participated in the underlying constitutional violation: 2) failed to remedy the violation upon learning of it: 3) established a custom, or policy fostering the violation, or allowed such custom or policy to continue after learning of the violation,4) was grossly negligent in the supervision of the subordinates who committed the violation ,or 5) acted with deliberate indifference to the rights of plaintiffs by failing to act on allegations of the subordinates misconduct. **Colon v. Coughlin,** 58 F.3d 856, 873 (2nd Cir. 1995). **Iqbal v. Hasty**, 490 F3d 143, 152 (2nd Cir. 2007).

Plaintiffs' have failed to meet their burden of proof and therefore the defendants respectfully request this Court to dismissed plaintiffs' claims against officers Sexton and Gamble based on supervisory liability because the defendants' acts were not in violation of plaintiff's constitutional rights. When

supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action ,or inaction in the training, supervision or control of his subordinates. **Clay v. Conlee ,** 815 F. 2d 1164, 1170 (8th Cir. 1987)

## POINT VIII

### PLAINTIFFS' EIGHTH CLAIM FOR RELIEF FOR RESPONDEAT SUPERIOR UNDER NEW YORK STATE LAW FAILS FOR LACK OF A TORTIOUS ACT

Plaintiff's claim fails for several reasons. First as set forth above, Officer John Gamble was not present in the plaintiff's residence. Second, the Defendant officers had a legal right to enter the residence based on the exigent circumstances which were present at the time the officers entered the residence. In order to establish liability for respondent superior there must exist a tortious act must be present. **Talavera v. Arbit** 18 A.D. 3d 738,795 N.Y.S. 2d 708 (2nd Dept. 2005). The officers did not engage in tortious conduct and thus this claim should be dismissed.

### POINT IX

### THE PLAINTIFF'S NINTH CLAIM FOR RELIEF CITING MONELL UNDER 42.US.C. SECTION 1983, MUST BE DISMISSED FOR LACK OF EVIDENCE.

Plaintiffs have failed to proffer any evidence in support of their claims against the City of Mount Vernon for failure to train, supervise or discipline defendant officers and must be dismissed in its entirety. In order to subject a Municipality for liability under 42 U.S.C. Section 1983, the Plaintiffs must first plead, and prove (1) an official policy, or custom that (2) causes the plaintiff to be subjected to a denial of a constitutional right. See **Canton v. Harris**, 489 U.S. 378,(1989). **Monell v. New York City Depart. Of Social Servs,** 436 U.S. 658 (1978). See also **Wilner v. Village of Roslyn,** 952 NYS2d 71, (2nd Dept. 2012) Moreover, "for a cause of action to lie against a municipality, the action that is alleged to be unconstitutional must implement or execute a policy statement, ordinance. regulation ,or decision officially adopted, and promulgated by that body's officers, or have occurred pursuant to a practice so permanent, and well settled as to constitute a custom or usage with the force of law. **Pendleton v. City of New York**, 44 A.D. 3D 733, 736 (2nd Dept. 2007). Plaintiffs have failed to exhibit any form of

evidence showing the City of Mount Vernon engaged in a pattern, practice, custom or design which lead to the deprivation of the Plaintiff's constitutional rights and thus this claim must be dismissed..

**POINT X**

**THE CITY OF MOUNT VERNON POLICE DEPARTMENT IS A NON SUABLE ENTITY.**

The Mount Vernon Police Department is an agency of the City of Mount Vernon and is a non- suable entity under 42. U.S.C. Section 1983. See **Orraca v City of New York,** 897 F. Supp. 148, 151-152 (S.D.N.Y. 1995).        **POINT XI**

**SINCE THE POLICE OFFICERS ACTED OBJECTIVELY REASONABLE IN ENTERING PLAINTIFF'S RESIDENCE, THE DEFEDNATS ARE ENTITLED TO QUALIFIED IMMUNITY.**

The doctrine of qualified immunity is a well-recognized judicial doctrine that entitles police officers to be shielded from liability for damages unless the officer's conduct violates clearly established constitutional right of which a reasonable person would have known. **Weyant v. Okst,** 101 F.3d 845, 857 (2nd Cir. 1996). See also, **Harlow v. Fitzgerald,** 457 U.S. 800, at 818, 102 S. Ct. 2727(1982), or unless it was objectively unreasonable for the officer to have believed that their conduct did not violates those rights. **Anderson v. Creighton,** 483 U.S. 635, 107 S. Ct. 3034 (1987).        The legal requirement of a clearly established right means that the inquiry into whether qualified immunity is available to officers differs from the inquiry into whether the Fourth Amendment may have been violated. Actions that violate the Fourth Amendment do not necessarily deprive police officers of the defense of qualified immunity. **Anderson v. Creighton,** 483 U.S. 635, 107 S. Ct. 3034 (1987). See also **Malley v. Briggs,** 475 U.S. 335, 341 106 S. Ct. 1092 (1986) (noting that qualified immunity "provides ample protection to all but the plainly Incompetent or those who knowingly violate the law." Harlow 457 U.S. at 818, 102 S. Ct at 2738. Although the Defendants believe that they should prevail of the merits of the Plaintiffs claims, alternatively, the Defendants contend that they are protected under the doctrine of qualified immunity which shields the Defendants from any liability because the Defendant's acted objectively reasonable when they entered the Plaintiff's residence without a warrant based on the fact that a shooting had occurred and that the occupants of the Plaintiff's residence were involved. The subsequent limited

search conducted by the officer to prevent the occupants from securing a weapon the Defendants reasonably believed existed inside the residence did not violate the Plaintiffs' constitutional rights. Furthermore, the Defendants acted reasonable when they took protective measure to secure an area within the premised by ordering all residence to gather into the occupants living room in order that none of the occupants would have the means to retrieve a weapon to be used against the Defendants officers. Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." **Mitchell v. Forsyth,** 472 U.S. 511,526 (1985).

Governmental officials, such as the Defendant officers, performing discretionary functions" generally as shielded from liability for civil damage insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald,** 457 U.S. 800, 818 (1982). In determining the existence of qualified immunity, the Courts have undertaken a two-step inquiry, in either order, into whether a right was clearly established, and whether a plaintiff's constitutional rights have been violated. See **Pearson v. Callahan,** 129 S. Ct. 808, 816 (2009). Whenever reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established right, the defendant is entitled to qualified immunity. See **Malley v. Briggs**, 475 U.S. 335, 341 (1986). Law enforcement officials are given the constitutional benefit of the doubt, and are protected unless they are" **plainly incompetent or knowingly** violate the law". **Saucier v. Katz,** 533 U.S. 194, 205 (2001) (emphasis added) Based on the facts stated above the officers are entitled to qualified immunity. **CONCLUSION**

Based on the foregoing, the Defendants respectfully request this honorable Court to grant the Defendants' motion in its entirety, and dismiss this action together with such other and further relief as the Court deems just and proper.