UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VAUGHN SCOTT, NIGERIA SCOTT, PRINCE SCOTT,
ANDREE HARRIS, BRENDA SCOTT, KRAIG UTLEY,
COREY MARROW, A.S. A MINOR CHILD,
K.M. A MINOR CHILD, AND JULIAN RENE,

                Plaintiffs,                14 CV 04441 (K.M.K)

    -against-

CITY OF MOUNT VERNON, A MUNICIPAL ENTITY,
MT. VERNON POLICE OFFICER ALLEN,
MT. VERNON POLICE OFFICER CAMILO ANTONINI,
MT. VERNON POLICE OFFICER TIMOTHY BRILEY,
MT VERNON POLICE OFFICER DET. BRENT GAMBLE,
MT. VERNON POLICE OFFICER SGT. STEVEN SEXTON,
CITY OF MT. VERNON POLICE DEPARTMENT, AND
POLICE OFFICERS JOHN DOES 1-10.

                Defendants,
_____X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**
_____

                By    /s/_____
                       Welton K. Wisham, Esq. (WW8674)
                       43 West 43rd Street, Suite 95
                       New York, New York 10036-7424
                        Attorney for the Defendants
                            (212) 709-8183

Dated: June 5, 2016

|  | |
|---|---|
| **TABLE OF CONTENTS** | **PG** |
| **TABLE OF AUTHORITES** ……………………………………………………………….. | iii |
| **STATEMENT OF FACTS**……………………………………………………………….… | 1 |
| **LEGAL ARGUMENT**……………………………………..…………………………… . | 6 |
| **DEFENDANT'S STATEMENT OF GENIUNE DISPUTE OF THE EXISTENCE OF MATERIAL FACTS** ………………………………………………………………...… | 1 |

**POINT I**

Defendants are entitled to summary judgment on Plaintiff's first claim for alleged violations of plaintiff's Fourth Amendment Right to be free from unreasonable search, seizure and arrest because of the exigent circumstances which existed prior to entry and  the existence of probable cause to believe that the occupants were involve in a serious crime involving a deadly weapon. ……………. 	6

**POINT II**
Defendants are entitled to summary judgment on Plaintiffs' second claim of false arrest under 42. U.S.C. Section 1983. The arrest and subsequent guilty plea by Corey Marrow and Prince Scott on March 25, 2013, to Obstruction of Governmental Administration was based on probable cause…………… 	6, 7

**POINT III**

Defendants are entitled to summary judgment on Plaintiff's third claim for failure to intervene based on the exigent circumstances that probable cause existed to search and seize the occupants present in Plaintiff's residence. ……………………………………………………………………………………….. 	7

**POINT IV**

Defendants are entitled to summary judgment  on Plaintiff's eight claim under Respondent Superior against City of Mt. Vernon and Sgt. Steven Sexton because the officers were justified in their reasonable belief that exigent circumstances and probable cause existed prior to Defendant's entry into Plaintiff's residence. ………. 	8, 9

**Point V.**

Defendants are entitled to Qualified Immunity on all claims based on their reasonable belief that exigent circumstances existed along with probable cause to believe that the occupants had been involved in a serious crime, Assault in 2nd Degree which justified entry into plaintiffs' residence………………………….. 	9-12

**CONCLUSION**……. …………………………………………………………………………… 12

**TABLE OF AUTHORITIES**

**Cases** **Page**

**Curley v. Vill. Of Suffern,** 268, F. 3d 65, 70 (2nd Cir. 2001)……………………………………… 9

**Dorman v. United States,** 435 F. 2d 385, 391, (D.C. Cir. 1970)…………………………………. 11

**Elder v. Holloway,** 510 U.S. 510, 514, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994)…………….. 9

**Gregoire v. Biddle,** 177 F.2579, 581 (2nd Cir. 1949)……………………………………………… 9

**Harlow v. Fitzgerald,** 457 U.S. 800, 814, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)……………. 9

**Illinois v. Gates,** 462 U.S. 213, 232, 103 S. Ct. 2317 (1983)……………………………………… 8

**Kirk v. Louisiana,** _U.S. 122 s. Ct. 2458, 2459 153 L. Ed. 2d 599 (2002)……………………… 11

**Koch v. Brattleboro,** 287 F. 3d 162, at 169 (CA2 2002) ………………………………………… 12

**Mitchell v. Forsyth,** 472 U.S. 511, at 526, 105 S. Ct.2806 (1985)………………………………. 9

**Poe v. Leonard,** 282 F.3d. 123, at 132.(2nd Cir. 2002) …………………………………………… 9, 10

**Provost v. City of Newburgh,** 262 F .3d 146, 155 (2nd Cir. 2001). ……………………………… 8

**Saucier v. Katz, 523 U.S. 194 (2001)** ……………………………………………………………… 10

**Theodore E. Loria v. Charles Gorman ,** 306 F. 3d 1271 (2nd Cir 2002).......................................... 9

**United States v. Fields**, 113 F.3d 313,323 (2nd Cir. 1997)………………………………………… 11

**United States v. MacDonald,** 916 F2d 766, 769-70 (2nd Cir. 1997)……………………………. 11

**Welsh v. Wisconsin,** 466 U.S 740, 749-50, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984)…………… 11

**Weyant v. Okst,** 101 F.3d 845,853 (2nd Cir. 1996)………………………………………………….. 6, 7

**STATUTES**

P.L. Section 195.05 "Obstruction of Governmental Administration" ………………………………. 7

P.L. Section 120.05 " Assault in the Second Degree"……………………………………………….. 11, 12

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>VAUGHN SCOTT, et. al. | (14 CV 04441(K.M.K.)<br><br>**DEFENDANTS' REPLY<br>MEMORANDUM OF LAW<br>IN FURTHER SUPPORT OF<br>THEIR MOTION FOR<br>SUMMARY JUDGMENT** |
| Plaintiffs,<br>-against-<br>CITY OF MOUNT VERNON, et.al.<br>Defendants, | ORAL ARGUMENT<br>**REQUESTED** |

Defendants City of Mount Vernon, Mount Vernon Police Department, Officer Allen, Officer Camilo Antonini, Detective Brent Gamble, Officer Sgt. Steven Sexton, and Officer Timothy Briley, by their attorney Welton K. Wisham, as outside counsel for the Corporation Counsel of the City of Mount Vernon, submit the within reply memorandum of law in further support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF FACTS

The Court is respectfully directed to Defendants' Statement Of Facts under Fed. R. Civ. Pro. Local Rule 56.1

## DEFENDANT'S STATEMENT OF GENUINE DISPUTE TO THE EXISTENCE OF MATERIAL FACTS.

The Defendant hereby refutes Plaintiff's counsel Statement of Facts as set forth in Plaintiff's 56.1 statement as follows:  Defendants hereby dispute the following paragraphs of Plaintiff's 56.1 Statement of Facts.

1. Defendants contend that plaintiff's Corey Marrow, Prince Scott, Julien Renee, and Kraig Utley are not law abiding citizens as claimed by Plaintiff's counsel.  Marrow, Scott, Renee and Utley, have all been arrested on numerous occasions by the Mt. Vernon police department and by officers Antonini, and Sexton. **Def. Ex.** " J","L","M","O".

1

2.  Defendants did not admit to plaintiff's contentions.  See Defendants' answer. **Pl. Ex.**"B" ¶ 1-28, denials of plaintiff's contentions.

5.  Defendants deny plaintiff's contention that plaintiffs were under unlawful arrest.  Defendants' seizure of the plaintiffs was based on the exigent circumstances, and the defendant's reasonable belief that the occupants at 328 South 2nd Ave. were involved in a serious crime assault with a deadly weapon. **Pl. Ex.**"U", (calls to 911), **Def. Exhibits,** "B", "D", E",G", "H", I', "J".  Julien Renee was found inside plaintiff's apartment with a flesh wound to his buttocks. Renee had been gazed by a bullet during shooting minutes before the Defendants arrived at the premises.  Rene was bleeding.  Renee admitted that he had gotten shot and had left the scene of the shooting in a van, driven by Corey Marrow. Prince Scott, and Kraig Utley, were at the scene of the shooting and left in the van driven by Corey Marrow. **Def. Ex. No,**"6", at 35:2-25, 39: 3-5. 11:12-25, 12:2-10.

6.  Defendants denied this allegation in their answer. **Def. Ex "B"**, ¶ 1-28.

77. Defendants deny these allegations.  An eyewitness to the shooting saw " two [males] that were shooting, had on black jeans and ran towards 7th Ave ,4th St. playground through the projects. **Pl. Ex.**"U", police 911 audio tape at 7:37-8:41.( mislabeled as **Pl. Ex**.No. "14.' **Def. Ex.** "G".

79. Defendants had reasonable belief that there might have been a victim at 328 South 3nd Ave where the defendants found the minivan with its engine still warm, based on the fact that the police recovered three 9 mm shell casings at the scene of the shooting and the undisputed fact that several shots had been fired. **Def. Ex.**"P".  In addition, the Defendants found a victim of the shooting Julien Renee, who retreated to 328 South 2nd Ave. **Def. Ex.** "B" at pg. no.4. See also **Def. Ex.** "G". **Def. Ex.** No. "6", at, 11:12-25, 12:2-10.

85. Defendants contend that Officers Gregorio, and Santo, arrived at 328, South 2nd Ave. not 324 South 2nd Ave. **Def. Ex.**" I". The officers were in pursuit of a white minivan with a broken rear windshield that was seen leaving the scene of a shooting with several male blacks. This information was broadcasted over the Defendants police radio. Id.

86. Defendant's deny plaintiff's allegation contained in this paragraph. Gregorio stated in his report that the van was seen traveling southbound down South 9th Ave. Gregorio immediately began to canvass the nearby area and found the van parked in the driveway of 328 South 2nd Ave. The van's rear windshield was shattered, and covered with plastic. **Def. Ex.** "I".

87. Defendants deny plaintiff's assertion that the van was parked in driveway of 324 South, 2nd Ave. Gregorio clearly states in his report that he found the van parked in the driveway of 328 South 2nd Ave. **Def. Ex.**" I."

89. Defendants contend that Gregorio reported that he received information that "multiple suspects were seen getting into a van with a shatter windshield at South 9th Ave. and 3rd. street. Gregorio found the van parked at 328 South 2nd Ave. **Def. Ex.** "I".

92. Defendant disputes this assertion by plaintiffs. Defendants were aware from information dispatched to police that the van had left the scene of the shooting and was found 15 minutes later parked at 328 S. 2nd Ave. **Def. Ex.** "I". **Def. Ex.** "H". **Pl. Ex** "U".

93. Defendants contend that the dispatcher did not clearly state that" Nigeria Scott resided at a post office box" as alleged by plaintiff. **Pl. Ex.**"U".

94. Defendants denies plaintiff's allegation that Gregorio confirmed to dispatcher that the minivan was parked at 324 South 2nd Ave. Gregorio reports states the van was parked at 328 S.2nd. Ave. **Def. Ex.** "I".

101. Defendants knew from radio reports that at least 2 male blacks fled towards the 4th St. playground and that several males were seen running into a minivan. **Pl. Ex."**U" at 10:12. Gregorio found the van parked in the driveway at 328 South 2nd Ave. with its engine still warm. Gregorio and Sexton went to the 2nd flr where he met Brenda Scott. Prior to entry, Vaughn Scott informed the officers that the minivan parked in her driveway was owned by her daughter, Nigeria Scott who lived there (328 S. 2nd). **Def. Ex.** No."1" at 17:17-19, 21:7-25. Gregorio immediately observed six males in the apartment and observed "Prince Scott and Corey Marrow were sweating profusely, and breathing rapidly." Brenda Scott gave Gregorio and Sexton permission to enter. **Def. Ex.** "I".

106. Defendants dispute this allegation. Brenda Scott gave Gregorio and Sexton permission to enter when requested by stating "ok". **Def. Ex.** "I", **Def. Ex.** No."1", at 82:13-22.

121. Defendants dispute plaintiff's assertion that Sexton testified falsely that Brenda Scott told him the police could enter her apartment. Gregorio confirmed Scott's admission by stating in his report that Scott gave both he, and Sexton permission to enter. **Id**.

122. Brenda Scott told Officers Sexton and Gregorio that it was "ok" for the officers to enter to continue their investigation. **Def. Ex**" I", **Def Ex** No."1", at 82:13-22.

124. Defendants dispute plaintiff's assertion that Brenda Scott told police not to come in her apartment. Scott gave permission for Gregorio and Sexton to enter. **Def. Ex.**"I", **Def Ex.** No"1", at 24: 3-25, 25: 1-4, 82: 13-22.

135. This is a deliberate mischaracterization of officers Briley's testimony. Briley testified that the occupants did not give "him" permission to enter. Briley never testified that Sexton and Gregorio were not given permission to enter by Brenda Scott. **Def. Ex.** No"5", at 20:7-13

4

149. Defendants deny that Sexton pushed the door open and struck Brenda Scott's foot. No physical force was used by any of the officers. **Def. Ex.** "5" 46:17-25, 47:1.

150. Id.

157. Defendants dispute plaintiff's allegation that the house was searched. Sexton and the other defendant officers were waiting for a search warrant to permit them to conduct an extensive search for a weapon they reasonably believed existed. **Def. Ex** No"5", at 46:10-25, 47:1,

158. Sexton and the other officers present in the apartment conducted a limited search for victims and weapons. **Def, Ex No.**"1", at 46:22-25, 47:8-9, 48:22-25.

159. The Defendants did not break any fixtures or doors during their limited search of the premises. **Def. Ex. No.'1**', at 53:15-17.

184. Sexton was aware of reports of shots fired and that several black males were seen running into a van which was driven to 328 South 2nd Ave. Sexton, Gregorio and Antonini knew several of the men inside the residence due to the fact that Corey Marrow, Prince Scott, and Kraig Utley were known by the defendants to be members of a gang called the "Gunners", who were known acts of violence. **Def Ex No "1"** at 29:24-25, 30:1-8, 31:3-17, 32:6-12, **Def Ex. No "3'**, 23:3-1228:13-25, 26:1, 29:1-4.

185. Id.

186. Id.

191. The basis of Corey Marrow's arrest on March 23, 2013, was Marrow's unlawful interference with the defendants' investigation. **Def Ex** "Q" and R".

192. The charges were not dismissed. Marrow pled guilty to a lesser charge, Disorderly conduct in full satisfaction for the OGA charge on March 20, 2013. **Def. Ex.** "R". Marrow's admission of guilt for his March 20, 2013conduct, precludes him from asserting false arrest claims.

199. Detective Hutchins and LeFevre searched the van owned by Nigeria Scott. **Def. Ex.**"G".

212. Gamble was not involved in the March 20, 2013, incident. **Def Ex. No.** '4' at 11:15-25, 12:5-25, 13: 2-25,15: 2-25,16: 2-16.

**Legal Argument:**              **POINT I**

**Defendants are entitled to summary judgment on Plaintiff's first claim for alleged violations of plaintiff's Fourth Amendment Right to be free from unreasonable search, seizure and arrest because of the exigent circumstances which existed prior to entry and the existence of probable <u>cause to believe that the occupants were involve in a serious crime involving a deadly weapon.</u>**

Plaintiff's memorandum of law in support of partial motion for summary judgment failed to mention the fact that not only did "someone possess a gun" but that several shots had been fired at a location where plaintiffs Corey Marrow, Prince Scott, Kraig Utley, and Julien Renee admitted that they had been in the area where shots had been fired. Plaintiff's counsel also failed to mention the fact that the men, now known to be, Marrow, Scott, Utley and Rene, were seen by an eyewitness running into a minivan with a shattered rear window which was found by the defendants parked in the driveway of 328 South 2nd Ave. Moreover, plaintiffs' failed to mention the fact that prior to defendant's entry into the occupant's residence, the eyewitness to the shooting was brought to 328 South 2nd Ave by Gregorio. The eyewitness to the shooting identified the van as the van he had seen at the location of the shooting. Only then did Sexton and the other officers enter the occupants' apartment. Julien Renee was found inside plaintiff's residence bleeding from a bullet that had grazed him in his buttocks. The defendants all reasonably believed that an emergency existed which required immediate action and are thereby entitled to qualified immunity.         **POINT II**

**Defendants are entitled to summary judgment on Plaintiffs' second claim of false arrest under 42. U.S.C. Section 1983. The arrest and subsequent guilty plea by Corey Marrow and Prince Scott on March 25, 2013, to Obstruction of Governmental Administration was based on probable cause.**

Plaintiff's reliance on **Weyant v. Okst,** 101 F.3d 845,853 (2nd Cir. 1996) in support of plaintiff's second claim for false arrest, is flawed for several reasons. First, it is clear In **Weyant** that the plaintiffs

6

were both seized, arrested, and charged with violating the penal law set forth under the State of New York. Weyant conviction however was overturned, thus resulting in a favorable determination for a false arrest claim under 42 U.S. Section 1983. The defendants in the case at bar did not effectuate an arrest of any of the plaintiff's on March 23, 2016. Corey Marrow, and Prince Scott, were lawfully arrested on March 25, 2013, and charged with one count of the Offense of Obstruction of Governmental Administration in the 2nd Degree in accordance with Penal Law Section 195.05 stemming from the March 23, 2016, incident. See Exhibit **"Q".** Corey Marrow, and Prince Scott, pled guilty to this offense. See **Exhibit "R",** thus establishing the element of probable cause which serves as a complete defense to these claims. The plea by Morrow and Scott serves as an admission of their guilt for their unlawful interference with the defendants' duty to investigate a serious crime, assault in the 2nd degree on March 23, 2013. Probable cause for the arrest serves as a complete defense to plaintiff's false arrest and thus, the Defendants are entitled to dismissal upon summary judgment.

## POINT III

**Defendants are entitled to summary judgment on Plaintiff's third claim for failure to intervene based on the existence of exigent circumstances and that probable cause to search and seize the occupants present in Plaintiff's residence.**

The defendant officers were not under a duty to intervene to stop a limited search for weapons and victims, and to ensure the safety of the officers present within plaintiff's apartment. The Defendants were notified by the Mount Vernon police department that several shots had been fired and that e black males were seen running and getting into a white minivan. The police began to search for the van which was found approximately minutes later parked at 328 South 2nd Ave. Upon consent of one of the residents' the officers gained entry to further their investigation of an assault in the 2nd degree which involved the use of a firearm. Believing that lives were at risk, the officers entered, and conducted a limited search for weapons. The defendants are entitled to qualified immunity because of their

7

reasonable belief that exigent circumstances existed and the existence of probable cause to search and temporarily seize the occupants for the safety of the defendant police officers.

## POINT IV

**Defendants are entitled to summary judgment on Plaintiff's eight claim under Respondent Superior against City of Mt. Vernon and Sgt. Steven Sexton because the officers were justified in their reasonable belief that exigent circumstances and probable cause to search and seize the <u>occupants existed prior to entry.</u>**

Sexton was not in violation of the plaintiff's constitutional rights because the entry into the plaintiff's residence was based on the urgent need to determine whether the lives of the occupants were in danger and whether any victims were inside plaintiff's residence.  Sgt. Sexton actions were objectively reasonable based on the information he possessed prior to his entry into the plaintiffs' residence.  Sexton found the van that had fled from the scene of a shooting in which several shots were fired and three 9mm shell casing were recovered parked in the plaintiffs' driveway.  Sexton conducted a limited search for weapons and for any victims.  Sexton found Julien Renee inside the residence who pulled down his pants and showed officer Sexton his buttocks which had in fact been grazed by a bullet fired only minutes earlier where Renee, Marrow and Utley were seen running into a van. Sexton had probable cause to believe the existence of exigent circumstances which required immediate action based on now or never circumstances known to him prior to his entry into the plaintiff's apartment.

"Direct participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal. **Provost v. City of Newburgh,** 262 F .3d 146, 155 (2nd Cir. 2001). "Probable cause is an assessment of probabilities, not an ascertainment of truths" Lee, 136 F.3d at 103. (noting that an officer may rely on a complaint to establish probable cause, and cannot be held liable for a constitutional violation simply because the complaint turns out to have been false). Cf Illinois **v. Gates,** 462 U.S. 213, 232, 103 S. Ct. 2317 (1983).   Moreover, when

information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity. **Curley v. Vill. Of Suffern,** 268, F. 3d 65, 70 (2nd Cir. 2001). Sexton's reliance on the information contained in the 911 calls, **Pl Ex** "U", and the information supplied by Gregorio that the van was parked in the driveway of 328 South 2nd with its engine still warm, as well as Sexton's knowledge that some of the occupants were known to him to have been members of a gang, "the Gunners" who had been involved in serious criminal activity, including weapons possession, amounted to a reasonable belief that indeed exigent circumstance existed which authorized the warrantless entry and seizure of the occupants. See **Def Ex. No. "1"** at 81:22-25, 82:1-7. As a result thereof, Plaintiff's eight claim for relief should be dismissed.

### POINT V: QUALIFIED IMMUNITY

" Qualified immunity strikes a balance between the need to provide a means for the vindication of constitutional guarantees and the societal costs that inhere in litigation against public officials, including " the danger that fear of being sued will dampen the ardor of all but the most resolute or the most irresponsible public officials, in the unflinching discharge of their duties. " **Theodore E. Loria v Charles Gorman** 306 F.3d 1271 (2nd Cir. 2002) (quoting **Harlow v. Fitzgerald,** 457 U.S. 800, 814, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (Quoting **Gregoire v. Biddle,** 177 F.2579, 581 (2nd Cir. 1949). It does so by" shield[ing them] from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were clearly established at the time. **Poe v. Leonard,** 282 F.3d. 123, at 132. **Elder v. Holloway,** 510 U.S. 510, 514, 114 S. Ct. 1019, 127 L. Ed. 2d 344(1994). Qualified immunity is more than a simple defense, it is " **an entitlement not to stand trial or face the other burdens of litigation…** an immunity form suit rather than a mere defense to liability, and like an absolute

9

immunity, it is effectively lost if a case is erroneously permitted to go to trial". **Theodore E. Loria v. Charles Gorman,** 306 F. 3d 1271 (2nd Cir 2002) (quoting **Mitchell v. Forsyth,** 472 U.S. 511, at 526, 105 S. Ct.2806 (1985). (emphasis added)  In determining the existence of qualified immunity, Courts conduct a two part inquiry to determine if an official is entitled to qualified immunity.  The first inquiry is whether taken in the light most favorable to the party asserting the injury… the facts alleged show the officer's conduct violated a constitutional right. Saucier 533 U.S. at 201, ( ) This threshold inquiry is important in "providing a clear standard against which offices can measure the legality of future conduct" Id.  If the Court finds that the officer's conduct did not violate a constitutional right the inquiry ends and the officers are entitled to qualified immunity. Id.at 201.  In the event that the Court finds otherwise, the inquiry is extended to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" Id at 202. "If the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions". **Loria v. Gorman**, (quoting Poe at 282 F.3d at 133.  "If the officers reasonably believed that his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken." **Id.**

It is undisputed that on March 20, 2013 at approximately 6; 17 pm, police had received several calls alerting them that several shoots had been fired in the vicinity of South 9th Ave. The defendant officers were immediately dispatched and were engaged in an authorized official function, the investigation of an assault in the 2nd degree when they arrived at 328 South 2nd Ave.

Suspects were seen running and getting into a van during at the time that shoots were being fired.  The van was driven by Corey Marrow from the scene of the shooting to 328 South 2nd Ave.  Defendants knew that the van's engine was still warm leading them to their belief that the

occupants inside the van had been involved in serious crime. The officers also believed that the occupants inside the apartment faced an imminent threat or danger which required immediate action. The circumstances faced by the Defendants entitles them to qualified immunity because the defendants reasonably believed that probable cause existed which allowed defendants' the right to enter the residence to conduct a limited search for victims and weapons without a warrant. **Kirk v. Louisiana** U.S. 122 s. Ct. 2458, 2459 153 L. Ed. 2d 599 (2002).

In determining the existence of exigent circumstances, Courts have routinely used factors such as (1) the gravity or violent nature of the offense with which the suspect is to be charged, (2) whether the suspect is reasonably believed to be armed, (3) a clear showing of probable cause to believe that the suspect(s) committed the crime, (4) strong reason to believe that the suspect is in the premises being entered, (5) a likelihood that the suspect will escape if not swiftly apprehended, and (6) the peaceful circumstance of the entry. **Loria v. Gorman,** 306 F.3d 1271 (2nd Cir. 2002), **United States v. Fields,** 113 F.3d 313,323 (2nd Cir. 1997), (quoting **United States v. MacDonald,** 916 F2d 766, 769-70 (2nd Cir. 1997). "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action. **Id. at 769** (quoting **Dorman v. United States**, 435 F2d 385, 391, (D.C. Cir. 1970). It is well settled that the gravity of the offense weighs heavily in the determination of whether exigent circumstances exist. **Welsh v. Wisconsin,** 466 U.S 740, 749-50, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).

The offense for which the officers in the present case were investigating was an assault in the 2nd Degree, P. L. Section 120. 05. A person is guilty of assault in the 2nd degree when with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person or (2) with intent to cause physical injury to another person, he causes such injury to


such person or to a third person by means of a deadly weapon or a dangerous instrument. Assault in the 2nd degree carries a penalty of a maximum of seven (7) years in prison. The investigation of the offense of assault in the 2nd degree was a sufficiently grave and violent that provided Sgt. Sexton and the other defendant police officers reason to ignore the requirement of waiting to obtain a warrant prior to entry into a home where suspects were thought to have entered. The fact that a serious and violent crime had in fact had been committed in the instant case, weighs heavily in favor of finding that exigent circumstances were present which justified the defendants entry into the plaintiff's residence without a warrant. According to an eye witness, the shooting suspects ran into a van whose rear window was covered with plastic. (Pl. Ex "U" audio recording at 4:57-5:19). Two men were seen shooting who ran towards the projects wearing black shirts. (**Pl Ex.**"U" 7:37-8:41). The Defendants are entitled to qualified immunity if reasonable officers could disagree as to whether exigent circumstances were present. Koch v. Brattleboro 287 F. 3d at 169. Moreover, officers are entitled to rely on his fellow officer's determination that a search and seizure was lawful. "Probable cause is a fluid concept and the assessment of whether it exists is shaped by the factual context of the case" **Gates v. Illinois,** 462 U.S. at 232.

## **CONCLUSION**

For the reasons set forth above, as well as Defendants' Summary Judgment Motion, the Defendants respectfully request this honorable Court to grant the Defendants' motion in its entirety, and dismiss this action together with such other and further relief as the Court deems just and proper.

Plaintiffs have failed to address their fourth, fifth, sixth, seventh, and ninth claims for relief and are therefore abandoned.